LENA PAPPENHEIM, Respondent, *v.* THE METROPOLITAN ELEVATED RAILWAY COMPANY et al., Appellants.

Trespasses upon real property effected by an illegal structure thereon are continuous in their nature and give to the owner separate successive causes of action at law for damages, from time to time, as the injuries are perpetrated.

In each action the measure of recovery is for the damages sustained up to the time of its commencement.

The owner may also resort to equity to prevent continuance of the trespass and a multiplicity of actions at law.

In an equity action the court may, in case the defendant has the right to acquire title under the power of eminent domain, determine the amount of damages which the owner would sustain if the trespass were permanently continued, and may provide for payment of that amount by defendant and the execution by the owner of a conveyance of his rights, and may refuse an injunction in case defendant is willing to pay upon receipt of a conveyance.

*It seems* that where the defendant in the equitable action has no legal right to acquire the property, the condition allowing him to pay permanent damages will not be inserted, but upon the right of the owner being determined, plaintiff is entitled to recover his damages up to the entry of judgment, and to an injunction.

As to whether where the trespasser is a railroad corporation actually running its cars upon or through plaintiff's property, it will be justified in refusing to pay the amount of permanent damages upon delivery of a conveyance, and in submitting to an injunction, *quære.*

Where the owner of property affected by such an illegal structure sells and conveys the absolute fee, the vendee takes it with all the easements appurtenant to the premises, and all the rights of a general owner, and these may not be interfered with without compensation; and so, he may maintain an action to recover damages accruing after his purchase, or to restrain the continuance of the trespass.

*It seems* that in condemnation proceedings the measure of compensation would be the difference between the fair market value of the whole property at the time of condemnation, without the unlawful structure, and the present market value of the property left with the structure in existence, and this is the measure of the permanent damages, the payment of which on receipt of a conveyance, may, in an action to restrain the wrong-doer, be made a condition for the denial of an injunction.

The right of a vendee to restrain future trespasses cannot be defeated because of the fact that the vendor sold, without having brought any action in equity before his conveyance, and although he sold at a loss, because of the acts of the wrong-doer.  The vendor's right to bring such an action, or to receive the amount of the depreciation, ceases to exist upon the transfer of the property ; he retains his right to recover the temporary damages sustained while he was owner, but the right to restrain the continuance of the trespass, and with it the right to permanent damages, passes to the vendee.

In an action to restrain the operation of defendants' elevated railroad in a street in front of plaintiff's premises, and to recover damages, the court found that plaintiff obtained title to the property in 1883; that said railroad was built in 1880, and has been in operation ever since; that plaintiff paid the fair market value of the lot with the railroad in the street, and had sustained injuries by the construction and operation of the road from the time of her purchase to the time of trial; that defendants had the power of eminent domain and had authority to build the railway in the street but had not acquired plaintiff's easements therein.  Judgment was rendered granting a permanent injunction, but providing that it should not issue in case defendants paid a sum fixed as the amount of permanent damage to the fee, upon the execution by plaintiff of a deed conveying to defendant, plaintiff's interest in the easements taken.  *Held*, no error.

*Lawrence* v. *Met. E. R. Co.* (126 N. Y. 483); *King* v. *Mayor, etc.,* (102 id. 171); *Tallman* v. *Met. E. R. R. Co.* (121 id. 119), distinguished.

(Argued June 24, 1891; decided October 13, 1891.)

Appeal from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made the first Monday of December, 1890, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought to perpetually enjoin the defendants from operating their railway in Second avenue, between One Hundred and Twentieth and One Hundred and Twenty-first streets, in the city of New York, in front of the plaintiff's premises, and to procure the structure already built there to be removed, and to recover from defendants the loss and damage already sustained by reason of the past operating of the defendants' railway in front of the plaintiff's premises; and if the defendants should be permitted to so operate their road in the future, that it should be only upon condition that they first pay to the plaintiff the amount of the permanent loss and damage to her premises sustained by her by reason of such operation, and also the amount of her loss and damage already sustained. The defendants, in their answer to the complaint, set up various defenses, the chief of which and the one particularly argued and relied upon here is, that the railway was built in 1880, and has been in operation ever since, and if any damage has been inflicted upon plaintiff's premises by the erection and operation of the railway, such damage was inflicted at the time it was so built and operated, and at that time the premises were owned and possessed by some other person, and the plaintiff was not then their owner, and is not the owner of the cause of action.

The court found that the plaintiff, on the 23d of April, 1883, became the owner of the premises, and has ever since owned them, and since that time there has been a valuable building standing on them. Since that time the plaintiff has also owned, as attached or appurtenant to the premises, an easement of light, air and access in and over Second avenue, and the only property rights of the plaintiff interfered with by the defendants are easements of light, air and access therein, appurtenant to the plaintiff's premises, and she is not seized of any estate in the land forming the bed of such avenue in front of her premises. The railroad had, in fact, been built and in operation along Second avenue for some years prior to the time when the plaintiff purchased in 1883. She paid, according to some of the evidence, the fair market value of

the lot with the railroad in the avenue. It was also proved that the plaintiff had sustained injuries by the construction and operation of the road from the time of her purchase to the trial of the action in the sum of $1,800, and that the value of the plaintiff's easement in the fee taken, appropriated or interfered with by reason of such construction and perpetual maintenance and operation of defendants' railway over and above any benefits resulting therefrom and peculiar to the premises, was the sum of $2,000.

It was also found that the defendants were authorized by certain acts of the legislature to exercise the right of eminent domain, and thus to acquire plaintiff's easement if necessary; and defendants had like authority to build the railway in the streets in which it has been built, but there was nothing in the acts giving the defendants any authority to take plaintiff's property without compensation. The road has been built under the provisions of the so-called Rapid Transit Act (Chap. 606 of the Laws of 1875).

Judgment was given for the plaintiff in accordance with the findings of the court, and it was provided that the injunction should not issue in case the defendants paid the amount of the damage to the fee upon the execution by plaintiff of a deed conveying to them plaintiff's interest in the easement taken by defendants.

The judgment so entered was affirmed by the General Term of the Superior Court of the city of New York upon appeal, and from the judgment of affirmance the defendants appeal here.

*Julien T. Davies* and *Brainard Tolles* for appellants. The plaintiff failed to show herself entitled to substantial damages or to an equitable remedy. (*Cooper* v. *Crabtree*, L. R. (19 Ch. Div.) 193. In this case the compensation withheld from plaintiff (the withholding of which constituted her real grievance), was pecuniary in its nature and susceptible of ascertainment. Plaintiff was, therefore, bound to show, as part of her cause of action, that it would be, or legally might be, assessed

at a substantial sum. Equity does not intervene to prevent every trival, insignificant or unsubstantial violation of a bare legal right, but only where the injury apprehended is irreparable in its nature and substantial in amount, and where justice and good conscience are on the side of the applicant for its intervention. (*Hart* v. *McLaury*, 121 N. Y. 636, 643 ; *Genet* v. *D. & H. C. Co.*, 34 N. Y. S. R. 247, 253 ; *Jeffers* v. *Jeffers*, 107 N. Y. 653 ; *Corning* v. *T. I. & N. Co.*, 40 id. 220 ; *Clinton* v. *Meyers*, 46 id. 521 ; *People* v. *Canal Board*, 55 id. 397 ; *Health Dept.* v. *Purdon*, 99 id. 237 ; *Morgan* v. *Binghamton*, 102 id. 500, 504 ; *T.*, etc., *R. Co.* v. *H. T.*, etc., *R. Co.*, 86 id. 106, 123, 126 ; *People* v. *M. T. Co.*, 31 Hun, 596, 604 ; *Drake* v. *H. R. R. Co.*, 7 Barb. 508, 556, 559.) The plaintiff's right is really and substantially a right to compensation and not a right to the enjoyment of specific real property. (*Henderson* v. *N. Y. C. & H. R. R. R. Co.*, 78 N. Y. 423, 430 ; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 id. 98, 118 ; *Story* v. *N. Y. E. R. Co.*, 90 id. 122, 148, 171, 179 ; *Pond* v. *M. E. R. Co.*, 112 id. 189, 190 ; *Tallman* v. *M. E. R. Co.*, 121 id. 119, 125 ; *Abendroth* v. *M. R. Co.*, 122 N. Y. 1, 17 ; *N. Y. E. R. Co.* v. *F. N. Bank*, 135 U. S. 432, 440 ; *Krone* v. *K. C. E. R. Co.*, 50 Hun, 431, 432 ; *Taylor* v. *M. E. R. Co.*, 18 J. & S. 311, 322, 328 ; *Knox* v. *M. E. R. Co.*, 36 N. Y. S. R. 2 ; *S. A. R. Co.* v. *M. E. R. Co.*, 56 Hun, 182, 185 ; *P.*, etc., *R. Co.* v. *Oliver*, 44 Am. & Eng. R. R. Cas. 175 ; *McElroy* v. *Kansas City*, 21 Fed. Rep. 257 ; *P.*, etc., *R. Co.* v. *Kamlah*, 42 N. J. Eq. 93.) The easements in question have in themselves no more than a nominal value, and plaintiff's claim to substantial compensation rests wholly upon proof of consequential injury. (*Newman* v. *M. E. R. Co.*, 118 N. Y. 618 ; *Henderson* v. *N. Y. C. R. R. Co.*, 78 id. 423 ; *In re L.*, etc., *R. Co.*, 27 Hun, 151 ; *In re N. Y., W. S. & B. R. Co.*, 29 id. 609 ; *In re B. E. R. Co.*, 28 N. Y. S. R. 627 ; *In re U. E. R. Co.*, 8 N. Y. Supp. 813 ; *In re K. C. E. R. Co.*, 35 N. Y. S. R. 367 ; *Bush* v. *M. E. R. Co.*, 26 Abb. [N. C.] 73 ; *Gray* v. *N. Y. E. R. Co.*, 12 N. Y. Supp. 542 ; *Welsh* v. *N. Y. E. R. Co.*, Id. 545 ; *Purdy* v. *M. R. Co.*, 36 N. Y. S.

R. 43.)    The measure of compensation, where part of an entire tract is taken, is the difference between the actual market value of the entire tract at the time of condemnation and the market value of what will be left after the part proposed to be appropriated is taken out. (*Newman* v. *M. E. R. Co.*, 118 N. Y. 618; *T. & B. R. R. Co.* v. *Lee*, 13 Barb. 169; *In re N. Y., L. & W. R. Co.*, 27 Hun, 151; *In re N. Y., W. S. & B. R. Co.*, 29 id. 609; *In re U., C. & S. V. R. R. Co.*, 56 Barb. 456; *In re N. Y. C. & H. R. R. R. Co.* v. *Judge*, 15 Hun, 63; *In re Furman Street*, 17 Wend. 649; *Muller* v. *S. P. R. R. Co.*, 83 Cal. 240; *Geissinger* v. *Borough of Hellertown*, 19 Atl. Rep. 412; *C. L. Co.* v. *City of Providence*, 15 R. I. 246; *F. W. & N. O. R. Co.* v. *Pearce*, 75 Tex. 281; *O. B. R. Co.* v. *McDermott*, 25 Neb. 714; *P. S. V. R. Co.* v. *McCleary*, 125 Penn. St. 442, 451; *W. & W. R. Co.* v. *Kuhn*, 38 Kan. 104; *C., C. C. & N. Y. S. R. R. Co.* v. *Aunsman*, 11 Atl. Rep. 561; *R., etc., R. Co.* v. *Balthasar*, 119 Penn. St. 483; *Kucheman* v. *C. C. & D. R. Co.*, 46 Iowa, 366, 376; *J., etc., R. Co.* v. *Esterle*, 13 Bush. 667; *B. & P. R. Co.* v. *McComb*, 60 Me. 290; *I., B. & W. R. Co.* v. *Allen*, 100 Ind. 409; *V. & T. R. Co.* v. *Henry*, 8 Nev. 165; *Dearborn* v. *B., C. & M. R. Co.*, 24 N. H. 179; *In re M. W. R. Co.*, 35 id. 134; *Page* v. *C., M. & St. P. R. Co.*, 70 Ill. 324, 328; Cooley on Const. Lim. 565; Lewis on Em. Domain, § 478; *S. A. R. Co.* v. *M. E. R. Co.*, 56 Hun, 122; *P., etc., R. Co.* v. *Vance*, 115 Penn. St. 325; *Lawrence* v. *Boston*, 119 Mass. 126; *DeBoul* v. *F. & M. R. Co.*, 111 Ill. 499; *Brown* v. *C. R. R. Co.*, 125 id. 600; *Esch* v. *C., M. & St. P. R. Co.*, 72 Wis. 229; *S., etc., R. Co.* v. *Keith*, 53 Ga. 178; *Molton* v. *N. W. Co.*, 137 Mass. 163; *U. D. T. Co.* v. *Brunswick*, 31 Minn. 297; *V. & T. R. Co.* v. *Elliott*, 5 Nev. 358; *In re B., H. T. & W. R. Co.*, 22 Hun, 176; *Montgomery Co.* v. *S. B. Co.*, 110 Penn. St. 54; *Harrison* v. *I. M. R. Co.*, 36 Ia. 323; *Boom Co.* v. *Patterson*, 98 U. S. 403; *C. B. R. Co.* v. *Andrews*, 26 Kan. 702; 2 Washb. on Real Prop. § 284; Washb. on Easements, chap. 5, § 7; *Cartwright* v. *Maplesden*, 52 N. Y. 652; *S. V. O. A.* v. *City of Troy*, 76

id. 113; *Dyer* v. *Sanford*, 7 Metc. 395; *Winter* v. *Brockwell*, 8 East, 308; *Morse* v. *Copeland*, 2 Gray, 302; *Hoch* v. *M. E. R. Co.*, 37 N. Y. S. R. 200; *Herzog* v. *M. R. Co.*, Id. 56.) A jury might well find that the loss sustained by one who exercised his lawful right of selling his own property, and was compelled by such a state of the market to accept a diminished price for it, was the natural and proximate result of the construction and maintenance of the railroad. And if they so found, there is no legal reason why the railway company should not be liable to make compensation for the loss actually sustained. (*Squire* v. *Gould*, 14 Wend. 159; *Wynehamer* v. *People*, 13 N. Y. 378.) The wrong to be redressed in such a case is one which is personal to the owner, and which results from discrediting the property in the market and which accrues only when the property is brought into the market for sale. It bears more analogy to slander of title than to any other tort mentioned in the books. (*Like* v. *McKinstry*, 41 Barb. 186; *Dodge* v. *Colby*, 108 N. Y. 445; *Hargrave* v. *McKinstry*, 41 Barb. 186; *Law* v. *Harwood*, Cro. Car. 140; *Gresham* v. *Grinsley*, Yelv. 88; *Wilson* v. *Dubois*, 35 Minn. 471; *Swan* v. *Tappan*, 5 Cush. 104; *Stark* v. *Chetwood*, 5 Kan. 151; *Northrup* v. *Hill*, 57 N. Y. 351, 358; *Backhouse* v. *Bononi*, 9 H. L. Cas. 503, 513.) One who owned lands at the time of the construction of the railroad and who still retains the title, cannot recover permanent damages in an action at law, but is limited to such temporary damages, if any, as he has sustained up to the time of commencement of his action. (*Uline* v. *N. Y. C. R. R. Co.*, 101 N. Y. 98; *Mahon* v. *N. Y. C. R. R. Co.*, 24 id. 658; *Pond* v. *M. E. R. Co.*, 112 id. 186; *Otenot* v. *N. Y., L. & W. R. Co.*, 119 id. 603; *Tallman* v. *M. E. R. Co.*, 121 id. 119.) By an equitable action he may, however, compel the assessment and payment of that just compensation to which he is entitled under the Constitution. (*N. Y. N. E. Bank* v. *M. E. R. Co.*, 108 N. Y. 660; 112 id. 190; *Tallman* v. *M. E. R. Co.*, 121 id. 119; *N. Y. E. R. Co.* v. *F. N. Bank*, 135 U. S. 432.) Complete redress is given by including in the award a fair compensation

for the injury done to the marketable character of the property by the already existing structure. (*Henderson* v. *N. Y. C. R. R. Co.*, 78 N. Y. 423, 433.) One who has sold property injured by the construction of the railroad may recover in an action at law the loss actually sustained by him in the sale. (*Henderson* v. *N. Y. C. R. R. Co.*, 78 N. Y. 423; *Porter* v. *M. E. R. Co.*, 120 id. 284; *King* v. *Mayor, etc.*, 102 id. 171; *McFadden* v. *Johnson*, 72 Penn. St. 335; *Foote* v. *M. E. R. Co.*, 36 N. Y. S. R. 119; *Peck* v. *Goodberlett*, 109 N. Y. 180; 112 id. 189; *Mortimer* v. *M. R. Co.*, 25 J. & S. 509; *Taylor* v. *M. E. R. Co.*, 18 id. 311; *Lawrence* v. *M. E. R. Co.*, 126 N. Y. 483; *Dunlap* v. *T., etc., R. R. Co.*, 50 Mich. 470; *Pomeroy* v. *C., etc., R. Co.*, 25 Wis. 643; *Church* v. *G. R., etc., R. Co.*, 70 Ind. 163.)

*Charles Gibson Bennett* for respondent. The fact that the plaintiff acquired title to her premises after the construction of the railway is no bar to the relief awarded her by the judgment. (4 Kent's Comm. [10th ed.] 425; 101 N. Y. 98; 112 id. 186; *Corning* v. *T. I. & N. Foundry*, 40 id. 191; *Broiestedt* v. *S. S. R. R. Co.*, 55 id. 220; *Westbourne* v. *Mordant*, 1 Croke, 191; *Beswick* v. *Canden*, Id. 462; *Blunt* v. *Aiken*, 15 Wend. 522; *Brady* v. *Weeks*, 3 Barb. 157; *Campbell* v. *Seaman*, 63 N. Y. 568; *Staple* v. *Spring*, 10 Mass. 74; *Mahon* v. *N. Y. C. R. R. Co.*, 24 N. Y. 658; *Pond* v. *M. E. R. Co.*, 112 id. 186; *Bowie* v. *Brahe*, 3 Duer, 35; *Livingston* v. *P. I. Co.*, 9 Wend. 511; *Griswold* v. *M. E. R. Co.*, 122 N. Y. 102; 119 id. 540; 19 J. & S. 1; *Mitchell* v. *M. E. R. Co.*, 9 N. Y. Supp. 829; 12. id. 516.)

PECKHAM, J. The structure erected by defendants in Second avenue, in front of the plaintiff's premises, was as to her an illegal structure and inconsistent with the use of the avenue as a public street. At the time of building the railway a trespass was committed by the defendants upon the property now owned by the plaintiff, although she did not own it at that time. Such trespass has been continued from the time when the road was

built up to the time when the judgment in this action was entered. By continuing the trespass the defendants laid themselves open to continuous actions, in which the recovery would be for the damage sustained up to the time of the commencement of each action. These propositions are clear, and are now undisputed. They have been settled by the *Story* and the *U line* cases, so familiar to the court and the bar (90 N. Y. 122; 101 id. 98). The structure being illegal as to plaintiff, and constituting a continuing trespass, the railroad company is under a legal obligation to remove it and the law presumes that the company will do so.

In an action at law the owner of the property interfered with or trespassed upon cannot recover damages to his premises, based upon the assumption that such trespass is to be permanent. He can recover only the damages which he has sustained up to the commencement of the action. The judgment entered for the damages sustained does not operate as a purchase of the right to continue the trespass. But the owner may resort to equity for the purpose of enjoining the continuance of the trespass, and to thus prevent a multiplicity of actions at law to recover damages; and in such an action the court may determine the amount of damage which the owner would sustain if the trespass were permanently continued, and it may provide that, upon payment of that sum, the plaintiff shall give a deed or convey the right to the defendant, and it will refuse an injunction when the defendant is willing to pay upon the receipt of a conveyance. The court does not adjudge that the defendant *shall* pay such sum and that the plaintiff shall so convey. It provides that, if the conveyance is made and the money paid, no injunction shall issue. If defendant refuse to pay, the injunction issues. It may be that, in the case of a railroad actually running its cars upon or through property of another, it would not be justified in refusing to pay upon the delivery of the conveyance, and, instead thereof, submitting to an injuction. Public interests might have a right to be heard in that respect. But it is enough to say that, in the cases where permanent damage is to be paid, there is a condi-

tion that a conveyance shall be made, and the defendant thus secures title to the property used. In cases where the owner wishes to actually stop the further trespass and where the defendant has no legal right to acquire the property, such condition would not be inserted, and an injunction would issue upon the right of the owner being determined. (*Henderson v. Central Railroad Co.*, 78 N. Y. 423.)

The plaintiff, if he receive the amount of the permanent damage, is by the court compelled to convey the interest to the defendant which the defendant pays for in that way. Condemnation proceedings are thus avoided. It is conclusively determined that the trespass is to be continuous, and defendant concedes it when it avails itself of the condition and pays the permanent damage in order to receive the conveyance. It is only in this way that the owner recovers as for a permanent damage to his property.

In a case where the defendant has no power to condemn the property, if the owner in that event proceed in equity, he recovers only his damage up to the entry of the judgment, and at the same time secures an injunction which prevents the future trespass. If the owner sue at law he recovers his damages as stated. If the owner, without having brought any suit in equity, sell his property at a loss caused by the erection of the railroad, the question at once arises as to what rights are acquired by the purchaser, and what claim, if any, has the vendor against defendant. The vendee has in such case purchased and the vendor has sold to him in fee simple absolute the premises fronting the street, to which premises are attached, as property passing to him by the conveyance, the easements of light, air and access which the defendants have already interfered with and trespassed upon by the erection and operation of the road. (*Story* v. *El. R. R. Co.*, 90 N. Y. 122; *Lahr Case*, 104 id. 268; *Kane Case*, 125 id. 164.) The vendee finds the railroad making use of a portion of his property without right, and in the character of a mere wrong-doer. That use depreciates the value of the remaining part of the owner's property and causes him daily damage. He institutes his action, either at law or in

equity, to recover damages up to the time of the commencement of the action or permanently, and for an injunction, as the case may be, and in answer to proof of ownership and daily or permanent damage, he is told by way of defense that the railroad company paid or is liable to pay to his vendor the difference between what the vendor sold the property for to him and what it could have been sold for if the railroad were not there, and, therefore, it has the right to continue the act which, by such payment or liability, has been changed from a trespass to a valid action. It is true that the railroad has not received any conveyance of any right to continue the trespass. On the contrary, the vendor conveyed to plaintiff the absolute fee simple in the property, and all the ordinary rights of ownership passed with such conveyance. It was after such conveyance, and when the vendor was no longer owner, that, according to defendants, the company paid, or became liable to pay, his alleged loss caused by such sale, and which payment or liability defendant now claims has altered the situation so effectually. The vendee who obtained the property at what may have been a low price has, nevertheless, the rights of a general owner, which are not dependent upon the price which he paid for his title. Every day that the company operates its road over or through the property of the plaintiff it commits an illegal act or trespass, and the character of that act with respect to the property of the plaintiff is not in any degree affected by the fact that the plaintiff's vendor sold his property at a loss, which that vendor says he sustained from the illegal action of the defendant. There is no doubt that the same easements which were appurtenant to the premises owned by the plaintiff's vendor passed to his vendee, the present plaintiff, by the conveyance to her. They passed because they were appurtenant, and the vendor never attempted to reserve them, assuming even that such reservation were a legal possibility. As these easements passed to the vendee and became her property, as much so as the land itself, how is it that the railroad company has become possessed of the right to appropriate such easements, or any portion of them, without

payment to her? Her private property is taken without compensation to her under such circumstances, if defendant have the right to permanently enter upon and use these easements, and thus a constitutional guaranty is violated in her case and she is without redress. The answer to this assertion is made by the counsel for defendants in a very ingenious argument, the foundation of which is, however, laid in what seems to me an erroneous application of a general rule relating to the measure of damages in condemnation proceedings, and from which it is argued that the real actionable loss falls upon the owner of the property when the road was built, provided he sells his property in a depreciated market. They claim that such an owner has a cause of action to recover the loss he has sustained by a sale of his property in a market depreciated by the wrongful act of defendants in entering upon or appropriating the easements appurtenant to such property.

The argument, of course, assumes that if such a cause of action be made out, it must follow that none arises in favor of a subsequent purchaser who obtains the land at a price reduced on account of the existence of the road. Unless the one cause of action exclude the other the defendants would accomplish nothing by proving the existence of one in favor of the original owner.

The defendants' counsel assert that the permanent damage to the property was sustained by the vendor at the time he sold to the plaintiff, and that the company is liable to pay the same to him. Hence they say that in taking from the present owner the easements spoken of, which, when separated from the land to which they are appurtenant, are of themselves but of nominal value, the defendants would only be condemned to pay therefor a nominal sum, such as six cents; and as to the resulting loss in value to the adjoining land of the vendee, caused by the erection and operation of the railroad, the vendee has not sustained that loss, because she has only paid for the property the sum to which it had depreciated by reason of the existence of the road in front of it. Continuing the argument the counsel for the defendants state that if the present owner

(the vendee) should commence an action to restrain the further trespass, the defendants could at once commence proceedings to condemn the easements, and that the rule of damages would be the difference between the present market value of the whole property and that portion which would be left after the taking, and that difference would be nominal only. So that when the present owner commences her action to restrain the further commission of the trespass, the whole matter may be adjusted in such suit, and the same rule of damages would obtain. The result would be either that the defendants would be enjoined from further operating their road until they paid six cents, the nominal damage sustained by the present owner of the easements, or else the bill would be dismissed entirely on the ground that the aid of equity could not be invoked for the purpose of compelling the payment of merely nominal damages. This course of argument does not, as it seems to me, answer the claim of the present owner to enjoin the further trespass upon her property unless she is paid the damage which such trespass will permanently cause her. That damage is not merely nominal.

In 1880, the defendants erected their road, and by its erection and operation depreciated the value of the property now owned by the plaintiff. In erecting their road they trespassed upon the easements appurtenant to that property, and such trespass has been continuous ever since. By these wrongful acts the market value of the plaintiff's property has been greatly depreciated. If they were compelled to resort to condemnation proceedings, the defendants say it is the present market value which they must pay. The vice in this argument lies in the erroneous statement of the measure of damages. In such case and under these circumstances, where the value has been depreciated by the wrongful entry of defendants upon the property, it is not the present market value of such property thus damaged that the defendants must pay. Actual market value at the time of the institution of the condemnation proceedings is usually the inquiry. But when the defendant has already entered upon the property and has depreciated its

value thereby, it is plain that the simple question of value at the time of condemnation is not the proper rule. In such case the inquiry must be what would be the fair market value of the whole property at the time of condemnation, *without the railroad,* and the difference between that sum and the present market value of the property left, with the railroad in existence, would constitute the measure of damages to which the owner would be entitled. This inaugurates no new rule of damages in condemnation proceedings in this state. As the entry was unlawful, it is for the purpose of arriving at the value of the property regarded as not made, and the inquiry is what is the present value of such property without the presence of a structure which is there without right and which cannot be continued without payment in full for all damage done. Its existence cannot be considered for the purpose of diminishing what would otherwise be the present market value of the property. I think the same rule would hold in the case put by the defendants, where the city or any other body having the power should seek to take the owner's property, even though such owner had himself purchased subsequent to the erection of the road. The city would have no right to take the property from its owner on a valuation based upon the permanent character of a trespass which the law regards as temporary. The inquiry in the case supposed would still be, what would be the fair market value of the property with the railroad away ? That sum the city would have to pay, and when it acquired the title it would have the same right as any other owner to compel the defendants to desist from their trespass or pay the amount of permanent damage they caused by its continuance. Under this rule the amount which the present owner may have paid for the property will be wholly immaterial. As the act of the defendant in trespassing upon or appropriating any portion of the property was unlawful, any depreciation in the value of the property caused by such illegal action cannot be regarded in fixing the value of the property to be taken or the damage to that which will remain. The claim of the defendants that the loss from the depreciation in value was suffered by the original

owner when he sold, and that it is a personal claim in his case against them for which they are responsible, cannot, as it seems to me, be maintained. Such a doctrine would do away with the right of an owner of property to prevent a continuous trespass upon it by another. The defendants would say that, because the original owner transferred the property to his vendee, the defendants, by reason thereof, were thereby invested with the right to continue forever the original trespass, and the consideration for such license rested in their liability to pay (not necessarily in the payment to) the vendor the difference between the sum which he actually received for the conveyance of his land and that which he would have been able to secure had it not been for the acts of the defendants. Whether such sum had been paid or not would be immaterial so far as concerned the present owner. That would be a matter between the original owner and the defendants. But the present owner, on account of the transfer of the land to him, would really have no right to prevent the trespass, no matter how much in truth his property was damaged, and although the defendants had no more title to the property trespassed upon than they ever had. They could have no title because the original owner transferred it to his vendee, and after such transfer, of course, that owner could not again transfer any portion of the property to anyone else. The vendee took the title, and he certainly has not conveyed it to the defendants, but, on the contrary, still retains it absolutely. Thus with no title the defendants have by this course of reasoning been, in substance, invested with a right to perpetually appropriate property belonging to the plaintiff, because of a liability on their part, as they allege, to pay a former owner certain damages which he alleges he sustained by selling his property to the plaintiff at a reduced value caused by defendants' illegal act. This mere liability of the defendants to reimburse the vendor operates, by defendants' argument, as a bar to the rights of the vendee. If not paid by the defendants the liability still remains, and, of course, the bar still continues; and thus the general right which follows the possession of property to protect it

from a trespass is denied an owner, because the defendants are, they say, liable to a former owner on a personal claim by him for a loss occasioned by a sale.   Heretofore absolute ownership or legal possession of property has been regarded as sufficient to enable the owner to protect it from a trespass.   It has been sufficient to permit him to maintain an action to restrain its continuance, even though he was fortunate enough to secure the property at one-half its value.   The inquiry in such cases, where the owner sought to restrain the future trespass, has never been in regard to the price which the owner paid, or whether the former owner sold at a loss on account of the trespass.   The inquiry has been whether the plaintiff was the owner or entitled to the possession, and whether the acts of the defendants were illegal.   That is all that should now be required..

I have thus far referred to the case of the vendee for the purpose of inquiring what rights appertained to him as the present owner of the property.   But the argument in favor of the vendor, who owned the property when the road was built, and who sold his land in a depreciated market caused by the wrongful acts of the defendants, is not to my mind very strong.

In the first place, he had his right of action to recover for all damage caused by the trespass up to the time of the commencement of his action, and the subsequent conveyance of the land would not in any way affect that right.   If he desired to restrain the further continuance of the trespass or to recover for the permanent damage caused, he could, while owner, commence and maintain his action in equity.   In that action he would obtain full relief.   If he chose to sell instead of using the remedies which the law gives him, that was a matter, legally speaking, of his own choice.   The defendants did not compel, or limit, or restrain such sale.   Nothing that they did could be said to amount to any compulsion by them.   The law says their action cannot be regarded as a permanent trespass for the very reason that it is unlawful, and the law will not presume that an unlawful act is to be forever continued.   His choice to sell,

rather than avail himself of the remedies given him by the law, does not furnish a cause of action against the defendants to reimburse him for a loss arising because of the presumption he has indulged in that the trespass would be continuous and unpaid for.   He has chosen to regard the trespass in a light opposite to that in which the. law regards it, and the loss he has suffered thereby is not one which the law can regard as caused by the defendants.   If the original owner thus choose to sell his property without enforcing those rights which he has only by virtue of such ownership, the purchaser at any rate takes his fee and with it the rights of such an owner. The right to enjoin the continuance of the trespass has not escaped by the conveyance.   It cannot rest with the vendor, for he has no longer any interest in the land.   Unless it passed to the vendee it has vanished, and yet no conveyance by any one having the right to convey has been made to the trespasser, and so far as the legal title to the property is concerned, the trespasser has no lot or parcel in it.   It seems to me the right passed to the vendee.

I can see no similarity in the case of the owner of property who has thus sold at a loss, to that of one who has suffered from a slander of his title.   To start with, there is in the case at bar no slander.   And, again, there is no malice.   The erection of a structure on plaintiff's property by defendants cannot be twisted into a slander of plaintiff's title by them.   No one asserts that the defendants built their road knowing they were wrong-doers or trespassers.   The findings in this case substantially negative any such idea.   The court finds that the road was built in conformity with plans prescribed by boards of commissioners appointed under legislative authority.   It has been held that punitive damages ought not to be awarded against defendants for the taking of the property of abutting owners by the building of their road.   (*Powers* v. *Manhattan R. Co.*, 120 N. Y. 178.)   In brief, all the substantial facts which constitute a cause of action for slander of title are absent in this case, and the facts which exist have no analogy to those which constitute such a cause of action.   The wrong by

the defendants in the erection of the railroad does not directly or proximately cause the sale of the vendor's property at a loss. The defendants' counsel lays down the rule broadly that "whoever, by a wrongful act, limits or restrains another in respect to his lawful right to dispose of his property in the market to the best advantage, is liable in an action at law for the damages thereby occasioned." Without stopping to question the accuracy of the rule, which the defendants here lay down as an abstract proposition, I think no case can be found where it has been enforced under such circumstances as this case presents. All the facts must be here taken into account. It must be remembered that the law regards the act as a temporary wrong only, and as such it provides a full remedy for it. It provides a full equitable remedy, if the owner choose to pursue it and the act be of a permanent nature.

If, instead of resorting to his legal or his equitable remedy, he choose to sell, it cannot be said that, in a legal sense, he has been limited or restrained in respect to his lawful right to sell his property by defendant's wrongful act. The connection between the sale and the alleged cause is too remote and indefinite; it is not proximate or direct. Further than this, however, the right of action with respect to the damage inheres in the owner and possessor of the land, and it is by reason of such ownership and possession that the right of action accrues. (*Broiestedt Case*, 55 N. Y. 220; *Corning* v. *Troy, etc., Factory*, 40 id. 191.) A perpetual injunction was sustained in the first above-entitled case, which was obtained by a purchaser of land abutting on the street, restraining the further operation of the road, although it was operated prior to his purchase. Nothing that has been said in any other case in this court is opposed to these views. On the contrary, they are in the line of all its previous utterances. The point was not decided in the *Henderson* case, nor has it been decided in the *Lawrence* case against these same defendants (reported in 126 N. Y. 483). The question in the last case was in relation to the validity of the defense alleging that the property was used for the purposes of a house of prostitution. The defense was disallowed

for the reasons stated in the opinion of ANDREWS, J., and the rule of damages stated in the *U line* case was reiterated, that of diminished rental value. The case of *King* v. *Mayor, etc.* (102 N. Y. 171), simply held that the right to compensation for the property taken belonged to him who was the owner of the fee at the time the city took possession, although before the award under the statute the original owner had conveyed the premises. This was upon the ground that the statute authorizing the taking contained an adequate and certain method for raising the money on the part of the city to pay for the taking, and that when the possession was taken by the city under the statute it was a legal possession, and the award which was subsequently made paid for the title at the time the possession was taken, and that was in the original owner who conveyed before the award was made. The *Tallman* case (121 N. Y. 119), does not assert or assume that the plaintiff could recover for the diminished rental value for a term any portion of which was in the future. The recovery in that case had been allowed for a possible use of the premises which the plaintiff had not, in fact, attempted to make, and the possible profits for such possible use we held he was not entitled to recover. I have, as is seen, alluded to but a few of the many cases cited by counsel in the very elaborate briefs submitted to us. I have, however, read them, and I feel confident that nothing is laid down herein which is opposed to anything heretofore decided by this court. What the ultimate rights of lessor and lessee, as against defendants, may be we, of course, do not decide in this case. Their rights are not before us. Whether there is or is not any distinction between the rights of a vendor in fee, and those of a lessor is not the question and we do not, therefore, discuss it. The judgment here should_be affirmed, with costs.

All concur.

Judgment affirmed.