Gildersleeve, J.
The plaintiff is the owner of premises Ho. 790 Columbus avenue, between 98th and 99th streets. The lot is seventy-five feet deep and twenty-five feet in width, front and rear, and the improvement consists of a five story brick building. The first floor is rented for business, and the four upper floors are dwelling apartments, commonly called flats. There are two apartments on each floor, of five rooms each ; they have dumb waiter service, but no bath tubs. The plaintiff purchased the property in August, 1887, soon after the erection of the building, for twenty-four thousand dollars. The defendant constructed its elevated railroad on the avenue in front, of the premises in question and began to run its trains thereon in 1879, and in 1880 the road was regularly operated, and has been maintained and its operation continued down to the present time.
In 1891, the defendant constructed on said avenue a third track for express trains, and on this track, since the latter date and down to the present time, the so-called express trains to Harlem run in front of the plaintiff’s premises at the rate of thirty miles an hour. Owing to the natural grade of Columbus avenue at the point in question the defendant’s structure is of an unusual height, reaching an elevation opposite the plaintiff’s house of forty-seven feet. There are pillars that support the defendant’s track in front of the plaintiff’s house, and the nearest point of the defendant’s structure thereto is about thirty feet. Columbus avenue is one hundred feet wide, and the defendant’s structure occupies at this point the middle of the avenue. This action was commenced in February, 1891, to recover past damages to the rental value of the premises since plaintiff became the owner, and for an injunction to restrain the defendant from maintaining and operating its railroad on the avenue in front of plaintiff’s property. The bed of Columbus avenue in front of the premises in suit is owned by the Mayor, Aldermen and Commonalty of the city of Hew York. The plaintiff has never had any private right or easement therein other than the easements of light, air and access appurtenant to *108 said premises. In Kane v. N. Y. El. R. R. Co., 125 N. Y. 164; 34 St. Rep. 876, the court of appeals say: “An owner of a lot abutting on a city street, the fee of which is in the municipality, has by virtue of proximity special and peculiar rights, facilities and franchises in the street not common to citizens at large, in the nature of easements therein, constituting property, of which he cannot be deprived by the legislature or municipality, or by both combined, without compensation.” In Story v. N. Y. El. R. R. Co., 90 N. Y. 122, it was held that those rights or privileges in the street constitute an easement in the bed of the street, which attaches to the abutting property and constitutes private property,, within the meaning of the constitution, of which an owner cannot be deprived without compensation. It must, therefore, be held that the defendant has taken the plaintiff’s property without his consent, and is a trespasser. Strict rules must not be applied in ascertaining the extent of the wrong which the plaintiff has suffered. The plaintiff’s claim is concisely stated by his learned counsel in the brief before me as follows: “Our complaint is for rental values on the property above the depreciated value of it, on which we have received nothing during our title, while but for the road we should have received a fair ratio on our full value.” It is then suggested that the fairest way of determining the damage “is to fix the fee damage first and then allow a ten per cent, ratio on that yearly back to the date of plaintiff’s title.” When abutting property has sustained a fee damage by reason of the defendant’s acts, the amount in cases of this character is usually reached and most satisfactorily determined by ascertaining how the rental values have been affected by the defendant’s interference with the easements. No safer or more certain guide, in the ascertainment of the actual value of a piece of real estate, can be had than an observation of rents received. Prospective investors in real estate, in their endeavors to fix the fair market value thereof, if the property is improved and productive, look first to the rent rolls. If we follow the suggestion of plaintiff’s counsel on this branch of the case the usual course of inquiry cannot be taken.
There is, it seems, a very good reason for the suggestion under consideration. It appears from the evidence that there has been no decrease in actual rents received upon which to base a conclusion that the plaintiff’s rental values have suffered from the operation of defendant’s road. It is established by the evidence that the first floor, used as a store, with cellar privileges included, has rented since May, 1893, for $100 per month ; from May, 1891, to May, 1893, the rent was $80 per month; and for some time before as low as $60 per month. This shows a very handsome advance in rents actually received. It is proper here to call attention to the fact that since the construction and operation of the third track for the convenience of express trains there has been a substantial advance in the store rents. The rent for the flats amounts in the aggregate to $122 per month, and the plaintiff testifies that they have always rented for the same sum. The gross annual rents, therefore, during the plaintiff’s ownership may fairly be said to amount to $2,664. This sum exceeds eleven per cent. *109 of the purchase price. The highest ratio of rental to fee value for this property fixed by any o.f the witnesses is nine per cent. It seems, therefore, that the plaintiff has received a larger income from bis investment than experts in real estate values believe he had any reason to expect.
I repeat, that in the perusal of the rent roll of the plaintiff’s property can be found no warrant for an award to him of damages to rental values. But the plaintiff says that he has not received a fair ratio on the full value, or what the value would have been had the defendant’s road not occupied the avenue.
It is a reasonable income from the value of the property taken by the defendant that the plaintiff insists is the measure of his rental damage. This claim of the plaintiff cannot be maintained except upon the theory that he purchased the property at much less than its real value, and has been unable to reap the benefit of the good bargain made. The case is barren of evidence in support of such a theory. Nor is there any evidence to warrant the conclusion that the property in question has failed to share in the general increase of values shown to have taken place in respect of all real estate in the vicinity in question off the line of the defendant’s road.
In my analysis of the evidence and endeavor to ascertain what is proven I have closely followed the rule laid down for the ascertainment of damages in Pappenheim v. Met. El. R. R. Co., 128 N. Y. 436; 40 St. Rep. 445, and other cases laying down a similar rule. In my judgment the testimony fails to show any net damage to the plaintiff’s property flowing from the defendant’s .acts. I have made an estimate what would be the fair market value of the plaintiff’s property to-day without the railroad, and another estimate of the fair market value of the property as it exists now shorn of the easements belonging to the plaintiff which the defendant has seized and enjoys. On the question of fee damage I have considered present benefits and present damages, and fail to find that any net damage should be charged up against the defendant and awarded to the plaintiff. It must be held that the plaintiff’s premises, less his easements which the defendant has wrongfully taken, are worth more to-day, with the defendant’s railroad operating on the avenue upon which the plaintiff’s property abuts, than they would be without the existence of the railroad there. I cannot give approval to the contention of plaintiff that the benefits conferred by the defendant must all be charged up against past damages and allowed no weight in determining the present fee damage. Benefits, if there are any, begin with the damages, and if the operation of the road continues as begun, the benefits continue as well as the damages. It is urged by the plaintiff that the elevated road is not entitled to the benefit of originally bringing settlers into this region or upon Columbus avenue; that if the defendant wished to escape the. additional burden of increased values in acquiring the property of abutting owners necessary t.o the operation of its road, it should have taken condemnation proceedings years ago, at the time or before it entered upon the plaintiff’s property. I have nothing to do with the *110 value of plaintiff’s easements at the time the road was constructed, except so far as their then value throws light upon the present value thereof. The duty of the court is to determine what the property is worth now, by charging the defendant with damages and giving it credit for the advantages or benefits it confers. The increase in the values of property in the vicinity of plaintiff’s premises since the coming of the elevated road is clearly established by the testimony. The elevated stations at 81st, 93d and 104th streets have been centers around which operations in real estate first became active. They are points at which improvements were first made and around which the increase in values was first noticed. It must be observed, however, that the increase in values, except for certain business purposes, has been more substantial a lew hundred feet away from the-road. This is due to the fact that property sufficiently removed from the road to escape its disadvantages gathers practically all the benefits that accrue to abutting property.. It will not do, however, to make an award to plaintiff based upon testimony that some other property has benefited by the defendant’s acts more than the premises of plaintiff. A word in reference to the exceptional height of the defendant’s structure at the point in question, the third track and ■ the operation of express trains thereon.
The unusual height of the structure at the point in question (47 feet) tends, it seems to me, to lessen the interference. The damages to the lower and more valuable floors are reduced by th.e height of the defendant’s road to the minimum. There is less interference with the light; the noise is not as troublesome; the access is the same as if the structure was of the usual height; and the physical annoyance generally to the comfort of the occupants of the building is not as great. The testimony warrants the conclusion that the operation of express trains upon the third track aggravates the noise. Apparently these trains add to the physical damage from noise. In this connection it is not to be forgotten that noise is an element that has no direct bearing upon the fee values. It would seem that additional physical damage from the extra noise is only, as has been said, apparent; for I look over the testimony in vain to find any actual damage to the rental value that can be attributed to this source. The premises rent just as well since the construction and operation of the third track as before. The plaintiff says the rents of the flats have always been the same, and the rent of the store, as already stated, has increased materially since the running of the express trains. Moreover, it may be said that, as the defendant is not limited in the number of trains that may pass over its road, if the third track did not exist more trains would be run upon the remaining two .tracks. I have carefully compared the values dE the property in the neighborhood—upon adjacent avenues and streets, as given by the various witnesses, with the value of the plaintiff’s property, and cannot find that the plaintiff has not shared in the general increase of values shown to have taken place in- property generally in that vicinity off the line of the defendant’s road. I think the plaintiff made a good purchase when he bought the property in suit, and *111 should congratulate himself upon the handsome return it has yielded him. Although the plaintiff’s easements have been interfered with by the defendant, it must be held that the plaintiff lias been fully compensated therefor by the resulting benefits of defendant’s acts, and has suffered no pecuniary injury for which he is entitled to compensation; and, since the defendant’s road has been built with full authority of law, and now exists and is being operated by like authority, the plaintiff has no equitable cause of action The plaintiff has failed to show any loss of rental values due to the defendant’s acts during his ownership.
For these reasons the complaint must be dismissed. No costs.