(64 App. Div. 71.)

## In re GRADE–CROSSING COM'RS OF CITY OF BUFFALO.

(Supreme Court, Appellate Division, Fourth Department. July 23, 1901.)

1. MUNICIPAL CORPORATIONS—CHANGE OF GRADE—DAMAGES.

    Where the grade of a city street is changed, to the damage of abutting property, which is sold at a mortgage foreclosure after the grade has been changed, but before damages are awarded, the mortgagor, and not the foreclosure purchaser, is entitled to the award.

2. SAME—MEASURE OF DAMAGES.

    The damage to abutting property resulting from the lawful changing of the grade of a city street may be determined by deducting the value of the premises after the change from its value before.

Appeal from special term, Erie county.

Application by the grade-crossing commissioners of the city of Buffalo for the appointment of commissioners to ascertain damages resulting to landowners from a change in the grade of a city street. From an order confirming the report of the commissioners so appointed, George H. De Grood appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

John Laughlin, for appellant.
George H. Frost, for respondent.

McLENNAN, J. The facts are not in dispute. Pursuant to the provisions of the grade-crossing act of the city of Buffalo (so called), being chapter 345 of the Laws of 1888, as amended by chapter 255 of the Laws of 1890, and chapter 353 of the Laws of 1892, on the 6th day of January, 1899, the grade-crossing commissioners of the city of Buffalo duly presented their petition to the supreme court, asking for the appointment of commissioners to ascertain the compensation which ought to be paid to the owners of, or parties interested in, the premises described in the petition herein, and designated as "Parcel No. 5," on account of the injuries done to said premises by reason of changing the grade of Seymour street, upon which said premises abutted, and of Swan street, which also affords a means of access thereto. It is alleged in the petition, and at the time of its presentation it was a fact, that the appellant, George H. De Grood, was the owner of the fee of the entire premises designated as "Parcel No. 5." Said parcel, however, included two distinct pieces of land, which were separately described in the petition, the westerly piece being 20 feet on Seymour street, and the other, adjoining on the east, 30 feet, each being 133½ feet deep. On January 2, 1896, the respondent, Ruchte, became the owner in fee of the westerly 20 feet of said premises, subject to a mortgage for $1,500, held by one Ada A. Hyer, and immediately entered into possession of the same. At that time the appellant was, and ever since has been, the owner in fee of the balance of said parcel, being the easterly 30 feet, and has continuously occupied the same. On August 17, 1897, while the respondent and appellant were each the owner and in possession of their respective premises, the city of Buffalo, by its grade-crossing commissioners, commenced the

work of changing the grade of Seymour and Swan streets in accordance with plans and specifications theretofore duly adopted by them, and had completed the excavation thereof on or before December 9, 1897. The work of restoring said streets, or completing the work in accordance with said plans and specifications, was not fully completed until January, 1898. On the 26th day of October, 1897, while the work of excavating said streets was in progress, an action was commenced in the supreme court to foreclose the mortgage held by Ada A. Hyer, which was a lien upon the westerly 20 feet of parcel No. 5, owned by the respondent, and such proceedings were had in that action that a judgment of foreclosure and sale was obtained therein, and pursuant thereto the premises were sold on the 9th day of December, 1897, at which time the work of excavating the streets in question had been completed, and substantially all the damages to the abutting property had been done. Upon the foreclosure sale, the premises, being the westerly 20 feet of parcel No. 5, were bid off by said Ada A. Hyer, the mortgagee, for the sum of $1,500, leaving a deficiency of $316.08, for which sum a judgment was duly docketed in the office of the clerk of Erie county. Thereafter, and on the 31st day of December, 1897, the said Ada A. Hyer sold and assigned her bid to George H. De Grood, the appellant, who thereupon, and on the same day, obtained a deed to the premises from the referee appointed to sell in the foreclosure action, and immediately went into possession of, and has ever since continued to occupy, the same, and was in such possession under the title so acquired at the time these proceedings were instituted, and at the time the award of the commissioners was made. The respondent, not having any title to or interest in the premises appearing of record at the time the proceedings were instituted, was not made a party thereto. Commissioners of appraisal having been duly appointed in accordance with the prayer of the petition of the grade-crossing commissioners, they duly met and organized, and they ascertained and determined that the entire damage done to parcel No. 5 on account of the change in the grade of the streets in question was the sum of $5,065, and directed that said sum, less the sum of $360.55, with interest, the amount of the deficiency judgment held by Ada A. Hyer, and less certain costs and expenses, be paid to the appellant, George H. De Grood, which determination or report of the commissioners was confirmed by order made at special term on January 18, 1900. Thereafter, and on February 28, 1900, the respondent moved the special term for an order making her a party to the proceedings, modifying or vacating the report of the commissioners, and referring it to the same or new commissioners to ascertain and report as to the respective rights of herself and the appellant in said award; and an order was thereupon made vacating the order confirming the report of the commissioners, bringing in the respondent as a party, and remitting the proceedings to the same commissioners, to ascertain, determine, and report the respective rights and interests of the appellant and respondent to the award originally made by said commissioners. From that order an appeal was taken to the ap-

pellate division, and the order of the special term was in all things affirmed. The commissioners thereupon reassembled, and, after hearing the proofs and allegations of the respective parties, determined that the westerly 20 feet of parcel No. 5—the premises owned by the respondent—was damaged to the extent of $2,137 on account of the change in the grade of the streets in question, and directed that such sum, less the amount of the deficiency judgment held by Ada A. Hyer, with interest thereon, be paid to the respondent, and that the balance of the original award of $5,065, to wit, the sum of $2,928, less certain costs and expenses, be paid to the appellant; that being the amount of damages found to have been done to the easterly 30 feet of said premises, owned by him, on account of the work done by the grade-crossing commissioners. The commissioners of appraisal made their report accordingly. It was duly confirmed by an order of the special term, and from such report and order this appeal is taken.

The adequacy of the compensation awarded for the damages done to the entire premises described as "Parcel No. 5" is not in controversy. The sole question presented by this appeal is whether or not the appellant is entitled to the whole of said award, less the amount of the deficiency judgment held by Ada A. Hyer, or whether the respondent is entitled to such part thereof as represents the damages done to the premises of which she was the owner at the time such damage was done. We think the question must be answered favorably to the respondent. Certainly so, unless a different answer is compelled by controlling authority. No case can better illustrate the equitable character of the principle contended for by the respondent than the one at bar. It simply involves the proposition that, if injury is done to the real property of an individual, by authority of a municipality which is authorized to make compensation therefor, such compensation, or the right to recover it, should belong to the person sustaining the injury. Prior to August, 1897, the respondent was the owner of the fee and was in the quiet enjoyment of the westerly 20 feet of the premises in question, and at that time, we must assume, they were worth the sum of $3,637, the amount of the bid on the foreclosure sale and the damages awarded by the commissioners. The respondent, therefore, had an equity in the premises of at least $1,700. At that time the city of Buffalo, by its grade-crossing commissioners (we will assume, lawfully) seriously interfered with the respondent's use of said premises by substantially destroying the means of access thereto. It had been legally determined that the grade of the streets adjacent to said property should be permanently lowered several feet. The work of bringing the streets to the grade thus established was commenced and prosecuted until December, 1897, when the excavation was substantially completed. The remaining work was of a character which would tend to restore the streets to a better and more useful condition, but at that time substantially all the damage which was to be occasioned by the work had been done. The respondent's property was then permanently deprived of a useful street,—at least of one not as useful as had existed before. This condition was brought

about by the legal action of the city of Buffalo, and it was permanent. The result was that on account of those acts, when the work in question was thus completed, the premises of the respondent, instead of being worth $3,637, were only worth the sum of $1,500, the amount bid at the foreclosure sale. Her equity of $1,700 had thus been entirely wiped out and destroyed, unless she is entitled to recover the damages done to the premises owned by her. With these conditions existing, all within the knowledge of the appellant, he became the owner of the premises by assignment of the bid of the purchaser upon the foreclosure sale of the Hyer mortgage, and the referee's deed subsequently executed and delivered to him. He paid for the bid and the premises so conveyed to him only the sum of $1,500, and he must be presumed to have bought and fixed his price in view of all the facts as they existed at that time. The assignment of the bid or the referee's deed did not purport in terms to transfer or convey to him any claim for damages against the city of Buffalo arising on account of its act in permanently destroying or impairing the way of access to said premises prior to his purchase. The appellant now claims to be entitled to the premises which he bought, and also to a sum several dollars in excess of the price paid by him, which, if well founded, will give him the premises, and between two and three hundred dollars for nothing. We have made the foregoing suggestions for the purpose of indicating that, in our view, the appellant's contention cannot be sustained upon principles of equity, and we do not think it is supported by the decisions. In King v. Mayor, etc., 102 N. Y. 172, 6 N. E. 395, the controversy was as to who was entitled to an award of damages for closing the Bloomingdale road. In 1871, Edward and William King were the owners in fee of certain lots of land situate on said road. On that day they conveyed the lots to one Richard Brennan. In 1868 the road had been legally closed by action of the city of New York. The award for damages caused by the closing of the road was made against the city in 1880. It was held that the Kings or their representatives, and not the grantee or his representatives, were entitled to the award. Judge Earl, in writing the opinion of the court, said:

"The first question presented by this appeal is as to the ownership of an award of damages for the closing of the Bloomingdale road. That road ceased to be a public highway in March, 1868, when Edward and William King were the owners of premises injured by the closing, and who, under the provisions of the statute, became entitled to all damages which might be awarded for the injury done. The right to those damages at once accrued, and, although they were not fixed and ascertained until after the conveyance by the Kings to Brennan, and by the latter to the trustees of the cathedral, the fact does not alter the character of their right as a personal one, vested in them at the closing of the road. When paid it relates back to the original debt, which accrued at that time. That right remained theirs, and passed to the plaintiffs as their representatives, unless it was transferred by the deed of the premises executed by the Kings to Brennan. It was not in terms embraced in the deed, and was a mere right of action not running with the land; * * * and then the road was in fact closed when the deed was made to Brennan, who knew, or was bound to know, that the public highway no longer existed, and must be presumed to have

bought and fixed his price in view of that fact. The courts below therefore correctly held that the award belonged to the plaintiffs."

We think that case must be regarded as decisive of the question here involved. If the grade-crossing commissioners of the city of Buffalo had decided to entirely and permanently close Seymour street,—as they had a right to do under section 12 of the grade-crossing act,—the Case of King, supra, would be substantially identical with the case at bar. The fact that there was only a partial destruction of the street certainly cannot change the rule, or distinguish the case upon principle. If the Bloomingdale road had been narrowed to one-half its original width by action of the city of New York, and thereby damage had been sustained by the owners of the adjacent property, but less in amount than if the road had been entirely closed, it could not have been held that such damages would run with the land, and have passed to Kings' grantees, if the damages caused by the complete closing would not so pass. So far as appears, the city of Buffalo, in re-establishing the grade of Seymour and Swan streets, and entering thereupon and making the surface conform to such new grade, was not a trespasser, and was not guilty of any illegal act. Under authority of law it permanently appropriated to the use of the public a part or portion of respondent's easement appurtenant to her property. While the respondent was the absolute owner of the premises, and before the appellant acquired any interest therein, or to the easements appurtenant thereto, the appropriation by the city was complete. The damage had all been done, and could be ascertained and recovered in one action or proceeding. No question of continuing trespass is involved. The amount of damages would be determined by ascertaining the value of the premises before the street or its grade was interfered with by the city, and its value after such interference and its surface had been lowered several feet, and subtracting one from the other. Such damages, whenever ascertained or recovered, would belong to the respondent, unless specifically assigned or transferred by her, because it was her property that was injured; injured to such an extent that she could sell it only at a greatly reduced price. Under those circumstances, if under the necessity of permitting herself to be devested of her property by operation of law, she did not thereby lose her claim against the city of Buffalo; nor was she under the necessity of negotiating a sale of such claim to the purchaser of such premises, in order to realize anything on account thereof. This rule imposes no hardship upon the appellant. He got what he bought and paid for, to wit, the westerly 20 feet of parcel No. 5, with the surface of the street lowered several feet below the surface of the premises. As said by Judge Earl in King v. Mayor, etc., supra, "he must be presumed to have bought and fixed his price in view of that fact." We have not been able to discover that the doctrine laid down in King v. Mayor, etc., supra, which we regard as decisive of this appeal, has been in any manner criticised or questioned in any case subsequently decided by the court of appeals. On the contrary, it has been expressly approved in many

cases subsequently decided.   In Utter v. Richmond, 112 N. Y. 613, 20 N. E. 554, the court said:

"No doctrine could be more clearly just than that, when land is taken for public use, the damages awarded are to take the place of the land in respect to all the rights and interests which are dependent upon and incident to it.  No different rule was in any manner held or intimated in King v. Mayor, etc., upon which the appellant relies.  There the right to the award had accrued, and the land value diminished, before the conveyance was made under which the grantee claimed the damages, and we held that the land already shorn of the easement was the subject transferred, and the right to the award did not pass by deed."

Quite as pointedly is the doctrine reiterated upon the authority of the same case in Porter v. Railroad Co., 120 N. Y. 284, 24 N. E. 454; Holloway v. Southmayd, 139 N. Y. 408–410, 34 N. E. 1047, 1052.

The decisions in the Elevated Railroad Cases, so called, cited by the able counsel for the appellant, in no manner conflict with the rule laid down in King v. Mayor, etc., supra.  Those were cases in equity, brought to perpetually enjoin the several railroad companies from trespassing upon the easements of the respective plaintiffs. The rules deducible from the decision of those cases, so far as they have any bearing upon the case at bar, are fully stated in the headnote in Pappenheim v. Railway Co., 128 N. Y. 436, 28 N. E. 518, 13 L. R. A. 401, and, briefly, are:

"Trespasses upon real property  *  *  *  give to the owner separate successive causes of action at law for damages from time to time as the injuries are perpetrated."

As we have seen, the city of Buffalo, in changing the grade of Seymour and Swan streets, and in excavating to make their surface conform to such new grade, was not a trespasser.  None of the parties to this proceeding so claim, or in any manner seek to enjoin its acts in that regard.   If the city of Buffalo had been a trespasser in doing the work in question, undoubtedly the person owning the property at the time such trespass was committed would be entitled to recover only such damage as was then done, and the next rule would apply:

"In each action the measure of recovery is for the damages sustained up to the time of its commencement;" and "the owner may resort to a suit in equity to prevent a continuance of the trespass, and a multiplicity of actions at law."   Again:  "Where the owner of property affected by such an illegal structure sells and conveys the absolute fee, the vendee takes it with all the easements appurtenant to the premises, and all the rights of a general owner, and these may not be interfered with without compensation; and so he may maintain an action to recover damages accruing after his purchase, or to restrain the continuance of the trespass."

In other words, it was held in that case, in substance, that the purchaser of real property which was being trespassed upon at the time of the purchase could recover damages for the continuance of such trespass after he became the owner, and could perpetually enjoin a continuance of such trespass.   It was further held that the vendor of such property did not have the right to recover damages for trespass committed upon the property sold by him after such sale, but that such damages belonged to his grantee.   In Pegram v. Railroad Co., 147 N. Y. 135, 41 N. E. 424, it was held that, where

the plaintiff had parted with the legal title to the premises, he could only recover damages caused by the trespass committed while he was the owner, and could not restrain by injunction subsequent trespasses. In the case at bar it is clear that the respondent would have no right to recover damages for a trespass committed upon Seymour street after she parted with her title to the westerly 20 feet of parcel No. 5, formerly owned by her, any more than she would have had the right to recover damages for a trespass committed on any other part of the premises formerly owned by her. Such damage would belong to the owner of such premises at the time when the trespass was committed; but, as we have attempted to point out, such rule is in no way applicable to the facts in this case. While the respondent was the owner, the city of Buffalo, acting under authority of law, destroyed, or substantially injured, the means of access to her premises. Damage was thereby done. It was all done while the respondent was still owner. The city of Buffalo is authorized to and is willing to make compensation for such damage, and the conclusion is reached that the compensation for such damage as was done to the westerly 20 feet of parcel No. 5 belonged to the respondent, was personal to her, did not pass with the land, and that the appellant, by acquiring the title, in no manner became entitled to receive the same, or any portion thereof. It follows that the report and order appealed from should be affirmed, with costs to the respondent.

Report and order affirmed, with costs to the respondent. All concur.