MARGARET FERGUSON, Respondent, *v.* VILLAGE OF HAMBURG, Appellant.

(Argued December 2, 1936; decided December 31, 1936.)

*R. Foster Piper* for appellant.

*Robert W. McNulty* for respondent.

FINCH, J.   This is an action in equity brought to obtain an injunction restraining the defendant, the village of Hamburg, from taking and diverting the waters of Eighteen Mile creek and to compel the removal of the dam erected by the defendant and to permit the waters of the creek to flow in their natural course.   This case and eleven other companion cases were referred to an official referee.   Pursuant to the decision of the referee a judgment was entered enjoining the defendant from diverting the waters of Eighteen Mile creek and directing that the dam be removed and the waters permitted to flow in their natural course unless the village of Hamburg within four months should acquire by grant from the plaintiff the right to appropriate the waters or, failing to acquire such right by grant, should institute condemnation proceedings to acquire this right.   Upon appeal to the Appellate Division the judgment was affirmed, two justices dissenting.

Eighteen Mile creek flows through the incorporated village of Hamburg and four miles therefrom empties into Lake Erie.   The village takes its water from a reservoir created by a dam in this creek.   The village also, after attempting to purify its sewage, returns the same to the creek below the dam.

The plaintiff, as well as several of the plaintiffs in companion cases, is an owner of land on this creek below the dam but above the outfall from the sewage disposal plant.   The plaintiffs in the other companion cases are riparian owners below both the dam and the outfall of the sewage disposal plant.   Although the village has been taking waters from the creek since 1923, there was no preceptible lessening of the flow of waters in the creek until 1928 when a higher dam was built creating a larger reservoir.   In 1930 and again in 1934 the dam was altered

so as to increase the storage capacity of the reservoir. The waters taken from the creek have been used by the residents of the village and also by persons residing outside the village boundaries. As a result since 1928 there has been a substantial diminution in the flow of waters below the dam, especially during the dry season.

Although there was a hearing before the Water Power and Control Commission in 1928 and permission was granted to the village to divert the waters and the flow of water was affected by the creation of the dam during that year, the plaintiff did not institute action until 1934. The village contends that the plaintiff and the others have not suffered substantial damage; that injunctive relief should not be afforded in view of the authorization granted by the Water Power and Control Commission; and that the plaintiff has lost her rights by laches. The village also claims that the relief should not be in the form granted.

The primary question on this appeal involves the form of relief. The plaintiff has been granted an injunction with the alternative in the defendant of purchasing the water rights or commencing a condemnation proceeding to acquire them. The village contends, and the dissenting judges in the Appellate Division are in accord, that since a court of equity had jurisdiction of the matter it should have determined the damages of each plaintiff and, upon ascertainment of such damages, provided that an injunction should not be granted unless the village failed to tender to the plaintiff the amount of the damages so fixed by the court in equity.

There can be no doubt that the plaintiff is not entitled to an absolute injunction. The controversy is not one between individuals but between an individual on the one hand and a municipality on the other. The acts of the municipality to which the plaintiff objects were for the purpose of furnishing the inhabitants of the village with one of the necessities of life. The plaintiffs in this and the other cases stood by while the village erected the dam and developed the water system and they cannot come forward

now and demand that the village raze the dam which was constructed at great public expense. (*New York City* v. *Pine*, 185 U. S. 93.)

The village, however, is diverting waters and thereby impairing the riparian rights of the plaintiff. The plaintiff, therefore, is entitled to relief. The only question is as to the form which the relief should take. The lower courts have granted the injunction unless the village purchases the water rights or institutes proceedings to condemn them. We need not consider the alternative of purchase. Although we have no doubt that the plaintiff will be fair and reasonable, nevertheless, it places her in a position where she can command her own price. The remaining alternative of condemnation proceedings takes the village out of a court of equity which has jurisdiction of the matter and sends it to institute new proceedings. In addition, there is grave doubt whether this alternative is a real one. Under the Village Law (Cons. Laws, ch. 64) condemnation proceedings are subject to a permissive referendum. (§ 221.) If such a referendum is demanded, a resolution must be submitted stating the amount to be expended. (§§ 139, 139-a–d, 129.) In the case at bar it would be extremely difficult to fix even an approximation of the amount necessary and it is possible that the amount estimated in an attempt to be on the safe side would be so high that the resolution would be rejected in the referendum. The net result would be that the plaintiff would have the absolute injunction to which it is not entitled.

Once a court of equity has jurisdiction of a cause it has the power to dispose of all the matters at issue and grant complete relief. (1 Pomeroy on Equity Jurisprudence [4th ed.], § 181; *Carpenter* v. *Osborn*, 102 N. Y. 552.) Even if it is found that the parties are not entitled to equitable relief a court of equity may retain the cause and grant such relief as is proper. (Pomeroy, *op. cit., supra*, §§ 231, 236.) " Equity will administer such relief as the exigencies of the case demand at the close of the trial." (*Bloomquist* v. *Farson*, 222 N. Y. 375, 380.) In the elevated

railway cases, which are analogous to the case at bar, the plaintiffs sought to restrain the maintenance of the elevated lines in front of their premises on the ground that they tended to destroy the plaintiffs' easements of light, air and access. The courts decided that the plaintiffs had a valuable right which was being impaired, but did not grant an absolute injunction or require the railway companies to resort to separate condemnation proceedings. Instead they held that a court of equity could ascertain the damages and grant an injunction which was not to be effective unless the defendant failed to pay the amount fixed as damages for the past and permanent injury inflicted. (*Pappenheim* v. *Metropolitan Elevated Ry. Co.*, 128 N. Y. 436; *Lynch* v. *Metropolitan Elevated Ry. Co.*, 129 N. Y. 274; *Van Allen* v. *New York Elevated Ry. Co.*, 144 N. Y. 174; *Cox* v. *City of New York*, 265 N. Y. 411.) This method of expeditiously disposing of the entire matter in a court of equity, sometimes termed " inverse condemnation," has been applied in a case where land owners sought to enjoin a municipality from diverting waters. (*Westphal* v. *City of New York*, 177 N. Y. 140; *New York City* v. *Pine*, 185 U. S. 93.)

The plaintiff has voluntarily subjected herself to the jurisdiction of a court of equity and thereby conferred upon the court the power to retain the cause and grant whatever relief is proper. A decree of " inverse condemnation," fixing the amount of past and permanent damages resulting from the impairment of the riparian rights of the plaintiff, and granting an injunction which is to take effect only if the municipality fails to pay such damages, would furnish expeditious and adequate relief. It is in practical effect the equ valent of a condemnation proceeding. It would reimburse the plaintiff for the impairment of her riparian rights; it would permit the defendant to continue to furnish its inhabitants with water; it would dispose of the entire matter in the court of equity and it would remove the possibility of placing

the village in a position where it might be at the mercy of an unfair riparian owner.

Such relief the plaintiff is entitled to and she is not barred by laches. The factual finding by the lower court that there has been no laches has been affirmed.

Nor is the plaintiff barred by the approval of the Water Power and Control Commission granted pursuant to a provision of the Conservation Law (Cons. Laws, ch. 65), requiring that the plan submitted by the village provide for the payment " of the proper compensation for any and all legal damages." (Conservation Law, § 523.)

It follows that the judgment appealed from should be modified so as to remit the cause to the Special Term to determine all the damages which the plaintiff has sustained by reason of the appropriation by the village of her property rights. When such damages have been determined a judgment may be entered providing that an injunction should issue against the village unless within a reasonable time, to be fixed by Special Term, the defendant should pay or tender to the plaintiff the amount of damages so fixed by the court.

The judgments should be modified in accordance with this opinion and as so modified affirmed, without costs.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, CROUCH and LOUGHRAN, JJ., concur.

Judgment accordingly.