ADDISON J. LYON, as Administrator with the Will Annexed of the Estate of ADDISON J. LYON, Deceased, Respondent, *v.* CITY OF BINGHAMTON, Appellant.

Argued June 1, 1939; decided July 11, 1939.

*Herman F. Nehlsen, Corporation Counsel (Jack W. Hummer* of counsel), for appellant.

*Frank J. Mangan* for respondent.

FINCH, J. This is a suit by the owner of a six-tenths interest in Rockbottom dam, which is built across the Susquehanna river, to restrain the city of Binghamton from unlawfully diverting waters from the river and from retaining possession of plaintiff's dam and appurtenant properties or, in the alternative, to obtain the fair value of plaintiff's rights of which defendant city has taken possession. (Cf. *Ferguson* v. *Village of Hamburg*, 272 N. Y. 234.)

Plaintiff and his predecessors in interest for more than one hundred years have maintained Rockbottom dam for the purpose of operating a mill. The effect of the dam has been to impound the waters for a distance of approximately four miles. As early as 1867 the city purchased riparian rights on the river some distance above the dam, and pumped water from the pond formed by the dam into the mains used by the city and its residents. Since about 1887 the city has taken water from the pond through a thirty-inch pipe, and since 1899 also through a thirty-six-inch pipe. The facilities now operated by the city permit the taking of more than twenty million gallons of water daily from the pond. Plaintiff and his predecessors in title have demanded continually since 1895 that the city discontinue the diversion of the water. In 1910 a suit in equity was brought by the executors of Addison J. Lyon against the city, wherein a judgment for injunctive relief and for incidental damage was sought. The suit was begun in 1910, and was decided in plaintiffs' favor in 1922 by the Supreme Court. Upon appeal to the Appellate Division in 1930, the judgment of the Supreme Court was modified by awarding to plaintiffs one dollar nominal damages and suspending the operation of the injunctive relief inasmuch as no substantial damage to plaintiffs had been established.

The judgment as modified also provided that plaintiffs at any time might apply at the foot of the judgment for further relief upon the showing of substantial damages. That judgment determined that the city had not acquired a prescriptive right to divert the waters. On or about July 20, 1934, the Mayor and police officers of the city forcibly took possession of the dam, and have continued to hold it against the protests of the owner. On that date the latter had been letting the water flow out through the raceway at a time when the city would have been left without a water supply but for the increased head of the water created by the dam. At that time such owner was endeavoring to ascertain the horsepower of the flow so as to determine its potential uses. The city at once repaired the openings then made by such owner, and has made further alterations to enhance the utility of the dam for the city's purposes. As a result of some of these changes, the current of the river has been altered, and a considerable portion of the land has been eroded. The present action was commenced on July 27, 1934, by Alfred H. Lyon, as surviving executor of Addison J. Lyon, deceased. Plaintiff has recovered judgment as follows:

1. $1, nominal damages for defendant's wrongful diversion of the waters of the river.

2. $8,000, damages sustained by the erosion of plaintiff's land.

3. $105,000, plaintiff's interest in the fair and reasonable market value of the Rockbottom dam, the land upon which it stands, its appurtenances, pondage, and all rights thereunto belonging. This item is to be paid in lieu of the operation of the injunctive relief asked for by plaintiff. This sum represents six-tenths of $175,000 fixed as the market value of the whole.

4. $42,000, plaintiff's share in and to the usable value of Rockbottom dam, the land upon which it stands, its appurtenances, pondage, and all rights thereunto belonging, which have been used by defendant for a period of six years prior to the commencement of the present action and down to the time of the trial. This sum represents six-tenths of $70,000 fixed as the total usable value.

Upon this appeal the city seeks review of only two questions: *First,* whether this action is barred by plaintiff's failure to comply with section 244 of the Second Class Cities Law (Cons. Laws, ch. 53) in regard to the giving of notice to the city before instituting proceedings; and *second,* whether the sum of $42,000 as damages for the six years' use prior to the time of the suit has been determined upon a proper theory of valuation.

Defendant also presents for the consideration of the court the legal effect of the judgment of the Supreme Court heretofore entered in 1897 in an action between the city and one Doolittle, owner of a one-tenth interest in the dam. That judgment authorized the diversion by the city of 8,000,000 gallons of water per day. Neither plaintiff nor his predecessors in title were parties to that action, and hence it cannot have any effect upon the relative rights of plaintiff and the city.

Defendant, in addition, presents for consideration the fact that two more actions have been instituted against the city by owners holding a two-tenths interest in the dam. In answer it is sufficient to say that the sums awarded herein represent only the value of the share owned by the plaintiff.

*First.* In so far as here relevant, the Second Class Cities Law, section 244, provides:

" * * * The city shall not be liable in a civil action for damages or injuries to person or property, or invasion of personal or property rights, of any name or nature whatsoever, whether casual or continuing, arising at law or in equity, alleged to have been caused or sustained, in whole or in part, by or because of any omission of duty, wrongful act, fault, neglect, misfeasance or negligence on the part of the city, or any of its agents, officers or employees, unless a claim therefor in writing, verified by the oath of the claimant, containing a statement of the place of residence of the claimant, by street and number, if any, otherwise such facts as will disclose such place of residence with reasonable certainty, and describing the time when, the

particular place where and the circumstances under which the damages or injuries were sustained, the 'cause thereof and, so far as then practicable, the nature and extent thereof, shall within three months after the happening of the accident or injury or the occurrence of the act, omission, fault or neglect out of which or on account of which the claim arose, be presented to the common council and served upon the mayor or city clerk and notice of intention to commence an action thereon be served upon the corporation counsel, nor unless an action shall be commenced thereon within one year after the happening of such accident or injury or the occurrence of such act, omission, fault or neglect; but no action shall be commenced to recover upon or enforce any such claim against the city until the expiration of three months after the service of said notice upon the corporation counsel. * * *."

The city has had actual notice of the information which should be contained in the notice required by section 244, even though plaintiff has not formally complied with the provisions of this section. This section, however, does not apply since the present proceeding is brought at the foot of the judgment of the prior action between the present parties. Section 244 does not apply to proceedings taken in the course of an action or at the foot of a judgment in an action where the jurisdiction of the court is complete.

*Second.* The sum of $42,000 as damages for the tortious acts of the city up to the time of the trial has been determined, not upon the basis of a loss sustained by plaintiff, but upon the basis of the value to the city of the dam and the pond. If not for the existence of the dam, the city admits that its intake pipes would be ineffective during the dry seasons because the water would be too shallow. However, prior to July 20, 1934, although the city took advantage of the existence of the dam and the pond, the city did not take actual possession of any of plaintiff's properties although the referee's findings recite that for six years prior to the action these properties " have been used and occupied by the defendant." It is conceded by plaintiff that the

city did not take physical possession and oust the plaintiff prior to July 20, 1934. There is no evidence whatever to sustain the finding that the dam, the land upon which it stands, etc., had been occupied prior to that time. The determination of the referee, which has been affirmed by the Appellate Division, is made upon the theory that where the owner of property cannot show actual damage, then he is entitled to recover the benefit which accrues to the trespasser upon the real property. This rule is here inapplicable for the reason that the city, although it unlawfully diverted waters, had not taken physical possession of the dam for much the major portion of the period under review. The referee properly rejected plaintiff's contention that he was entitled to be paid for the water which the city abstracted, since the erection of the dam and the impounding of the waters.

In *City of Syracuse* v. *Stacey* (169 N. Y. 231, 245), Judge HAIGHT, writing for all the sitting judges, said:

" There is simply the right to construct a dam, raise the water six feet high and use it for mill purposes, nothing more.

" Water, when reduced to possession, is property, and it may be bought and sold and have a market value, but it must be in actual possession, subject to control and management. Running water in natural streams is not property and never was. The construction of a dam across an outlet of a lake or a river or a creek for the purpose of securing power with which to operate mills or factories is not a reducing of the water to possession or to control or management, in such a sense as to change its legal character and make it property."

Accordingly, Lyon had not reduced the waters to possession so as to acquire a property right therein, but possessed only a right to damages if the natural flow of the water was diminished so as to affect his usufructuary right. When, however, the city, through its mayor and police, forcibly took possession of the dam and appurtenant land, part of which was covered by water, and ousted plaintiff from his

possession, a very different situation was created. From that time on plaintiff was entitled to the rental value of the real property taken. Prior to that time, however, the acts of the city amounted to no more than, at the most, an unreasonable diversion of the water, for which the referee has granted nominal damages, which preserve the legal title of plaintiff, and has awarded to him all to which he is entitled, in the absence of proof of damage measured by the difference in the value of his land with and without the water diverted by the city.

Upon a new trial plaintiff will be entitled to prove his damage to the time of the decree. (*Thomann* v. *City of Rochester*, 256 N. Y. 165, 171; *Stowers* v. *Gilbert*, 156 N. Y. 600.)

The judgment should be reversed to the extent of granting a new trial on the question of damages in accordance with this opinion, with costs to appellant in this court.

CRANE, Ch. J., LEHMAN, HUBBS, LOUGHRAN and RIPPEY, JJ., concur; O'BRIEN, J., taking no part.

Judgment accordingly.