Jasen, J. (dissenting).
I agree with the majority that a reversal is required here,. but I do not subscribe to the newly enunciated doctrine of assessment of permanent damages, in *229 lieu of an injunction, where substantial property rights have been impaired by the creation of a nuisance.
It has long been the rule in this State, as the majority acknowledges, that a nuisance which results in substantial continuing damage to neighbors must be enjoined. (Whalen v. Union Bag & Paper Co., 208 N. Y. 1; Campbell v. Seaman, 63 N. Y. 568; see, also, Kennedy v. Moog Servocontrols, 21 N Y 2d 966.) To now change the rule to permit the cement company to continue polluting the air indefinitely upon the payment of permanent damages is, in my opinion, compounding the magnitude of a very serious problem in our State and Nation today.
In recognition of this problem, the Legislature of this State has enacted the Air Pollution Control Act (Public Health Law, §§ 1264-1299-m) declaring that it is the State policy to require the use of all available and reasonable methods to prevent and control air pollution (Public Health Law, § 1265[1]).
The harmful nature and widespread occurrence of air pollution have been extensively documented. Congressional hearings have revealed that air pollution causes substantial property damage, as well as being a contributing factor to a rising incidence of lung cancer, emphysema, bronchitis and asthma.[2]
The specific problem faced here is known as particulate contamination because of the fine dust particles emanating from defendant’s cement plant. The particular type of nuisance is not new, having appeared in many cases for at least the past 60 years. (See Hulbert v. California Portland Cement Co., 161 Cal. 239 [1911].) It is interesting to note that cement production has recently been identified as a significant source of particulate contamination in the Hudson Valley.[3] This type of pollution, wherein very small particles escape and stay in the atmosphere, has been denominated as the type of air pollution *230 which produces the greatest hazard to human health.[4]
[5]We have thus a nuisance which not only is damaging to the plaintiffs,® but also is decidedly harmful to the general public.
I see grave dangers in overruling our long-established rule of granting an injunction where a nuisance results in substantial continuing damage. In permitting the injunction to become inoperative upon the payment of permanent damages, the majority is, in effect, licensing a continuing wrong. It is the same as saying to the cement company, you may continue to do harm to your neighbors so long as you pay a fee for it. Furthermore, once such permanent damages are assessed and paid, the incentive to alleviate the wrong would be eliminated, thereby continuing air pollution of an area without abatement.
It is true that some courts have sanctioned the remedy here proposed by the majority in a number of cases,[6] but none of the authorities relied upon by the majority are analogous to the situation before us. In those cases, the courts, in denying an injunction and awarding money damages, grounded their decision on a showing that the use to which the property was intended to be put was primarily for the public benefit. Here, on the other hand, it is clearly established that the cement com'¡pany is creating a continuing air pollution nuisance primarily ij for .its own private interest with no public benefit.
This kind of inverse condemnation (Ferguson v. Village of Hamburg, 272 N. Y. 234 may not be invoked by a private person or corporation for private gain or advantage. Inverse condemnation should only be permitted when the public is primarily served in the taking or impairment of property. (Matter of New York City Housing Auth. v. Muller, 270 N. Y. 333, 343; Pocantico Water Works Co. v. Bird, 130 N. Y. 249, 258.) The *231 promotion of the interests of the polluting cement company has, in my opinion, no public use or benefit.
Nor is it constitutionally permissible to impose servitude on land, without consent of the owner, by payment of permanent damages where the continuing impairment of the land is for a private use. (See Fifth Ave. Coach Lines v. City of New York, 11 N Y 2d 342, 347; Walker v. City of Hutchinson, 352 U. S. 112.) This is made clear by the State Constitution (art. I, § 7, subd. [a]) which provides that “ [p]rivate property shall not be taken for public use without just compensation ” (emphasis added). It is, of course, significant that the section makes no mention of taking for a private use.
In sum, then, by constitutional mandate as well as by judicial pronouncement, the permanent impairment of private property for private purposes is not authorized in the absence of clearly demonstrated public benefit and use.
I would enjoin the defendant cement company from continuing the discharge of dust particles upon its neighbors’ properties unless, within 18 months, the cement company abated this nuisance.[7]
It is not my intention to cause the removal of the cement plant from the Albany area, but to recognize the urgency of the problem stemming from this stationary source of air pollution, and to allow the company a specified period of time to develop a means to alleviate this nuisance.
I am aware that the trial court found that the most modern dust control devices available have been installed in defendant’s plant, but, I submit, this does not mean that better and more effective dust control devices could not be developed within the time allowed to abate the pollution.
Moreover, I believe it is incumbent upon the defendant to develop such devices, since the cement company, at the time the plant commenced production (1962), was well aware of the plaintiffs’ presence in the area, as well as the probable consequences of its contemplated operation. Yet, it still chose to build and operate the plant at this site.
*232 In a day when there is a growing concern for clean air, highly developed industry should not expect acquiescence by the courts, but should, instead, plan its operations to eliminate contamination of our air and damage to its neighbors.
Accordingly, the orders of the Appellate Division, insofar as they denied the injunction, should be reversed, and the actions remitted to Supreme Court, Albany County to grant an injunction to take effect 18 months hence, unless the nuisance is abated by improved techniques prior to said date.
Chief Judge Fuld and Judges. Burke and Scilbppi concur with Judge Bergan; Judge Jasen dissents in part and votes to reverse in a separate opinion; Judges Breitel and Gibson taking no part.
In each action: Order reversed, without costs, and the case remitted to Supreme Court, Albany County, for further proceedings in accordance with the opinion herein.

. See, also, Air Quality Act of 1967, 81 U. S. Stat. 485 (1967).

. See U. S. Cong., Senate Comm, on Pulbie Works, Special Subcomm. on Air and Water Pollution, Air Pollution 1966, 89th Cong., 2d Sess., 1966, at pp. 22-24; U. S. Cong., Senate Comm, on Public Works, Special Subcomm. on Air and Water Pollution, Air Pollution 1968, 90th Cong., 2d Sess., 1968, at pp. 850,1084.

. New York State Bureau of Air Pollution Control Services, Air Pollution Capital District, 1968, at p. 8.

. J. Ludwig, Air Pollution Control Technology: Research and Development on New and Improved Systems, 33 Law & Contemp. Prob., 217, 219 (1968).

. There are seven plaintiffs here who have been substantially damaged by the maintenance of this nuisance. The trial court found their total permanent damages to equal $185,000.

. See United States v. Causby (328 U. S. 256); Kentucky-Ohio Gas Co. v. Bowling (284 Ky. 470, 477); Northern Indiana Public Sen. Co. v. Vesey (210 Ind. 338); City of Amarillo v. Ware (120 Tex. 456); Pappenheim v. Metropolitan El. Ry. Co. (128 N. Y. 436); Ferguson v. Village of Hamburg (272 N. Y. 234).

. The issuance of an injunction to become effective in the future is not an entirely new concept. For instance, in Schwarzenbach v. Oneonta Light & Power Co. (207 N. Y. 671), an injunction against the maintenance of a dam spilling water on plaintiff’s property was issued to become effective one year hence.