FRANK BUHOLTZ, Respondent, *v.* ROCHESTER TELEPHONE CORPORATION, Appellant.

Fourth Department, January 18, 1973.

*Nixon, Hargrave, Devans & Doyle (G. Robert Witmer, Jr.,* and *John B. Hood* of counsel), for appellant.

*Kennedy, Ryan & Shields (John A. Shields* of counsel), for respondent.

MARSH, J.  This is an appeal from an order denying the motion of defendant-appellant for summary judgment, and dismissing defendant's first and second affirmative defenses and counterclaim.  Respondent Frank Buholtz owns property in the Village of Naples, New York, located in the northeast quadrant formed by the intersection of Maxfield Road on the west and Eelpot Road on the south.

On August 12, 1954, Rochester Telephone Corp. (appellant) obtained an easement for the location, construction and maintenance of telephone poles and wires on the east side of Eelpot Road from Robert and Mary Jane Dusenbury, who were the predecessors in title to respondent.  In addition, appellant had

previously been granted a franchise by virtue of the Transportation Corporations Law of the State of New York for purposes of locating, constructing and maintaining telephone service equipment within the public streets of the Town of Naples. In January, 1958 respondent obtained the subject property from the Dusenburys. Prior to that date appellant's overhead utility poles and wires had been erected along the north side of Eelpot Road, which formed the southern boundary of respondent's property. These poles were almost entirely within the Eelpot Road right of way.

In the spring of 1969, appellant decided to replace the existing overhead telephone service equipment with underground telephone cables. Appellant conducted an investigation of the subject property, and was allegedly informed by officials of the Village of Naples that the village, not respondent, owned the subject property. Appellant claims to have verified this information by reference to the town tax records. Appellant obtained an easement from the village on June 3, 1969, for the location, construction and maintenance of underground telephone equipment on the north side of Eelpot Road.

Between June 5, 1969 and June 19, 1969 appellant entered onto respondent's land and installed telephone facilities 3 feet deep, in an area 10 feet wide and 1,600 feet long, all as shown on the survey map. A portion of the cable was located within the town highway right of way, but the major part of the telephone cable was located on respondent's property.

On January 15, 1970, respondent instituted an action against the appellant for damages for trespass based on the above facts, and requested treble damages pursuant to section 861 of the Real Property Actions and Proceedings Law. Appellant's answer denied the allegations of trespass and damages, and contained both an affirmative defense based upon the easement of 1954, and a second affirmative defense and counterclaim requesting an order of inverse condemnation with an award of nominal damages.

Respondent moved for severance of the counterclaim from respondent's cause of action of trespass. Appellant cross-moved for summary judgment requesting an order and award of inverse condemnation or in the alternative a finding that appellant had probable cause to believe that its entry upon respondent's property was lawful, thereby reducing respondent's alleged damages. The court ordered that appellant's affirmative defenses and counterclaim be dismissed, that respondent's motion for severance was therefore academic, and that the issues for trial

would be whether appellant trespassed, and if so, the amount of damages.

There appears to be no sound reason in policy or case law for denying appellant the right of inverse condemnation.

In a recent case sanctioning inverse condemnation, *Heyert* v. *Orange & Rockland Utilities* (24 A D 2d 592, affd. 17 N Y 2d 352), plaintiff owned property to the center of the road and the gas company installed a gas main in the highway right of way. Plaintiff commenced an action of ejectment against the gas company contending that the gas main was not a use within the contemplation of the original highway easement. The court held such indeed was the case and then permitted defendant's counterclaim for inverse condemnation, reversing the trial court which had appointed commissioners under the Condemnation Law. The Appellate Division stated (p. 593): "The plaintiff has voluntarily subjected herself to the jurisdiction of a court of equity and thereby conferred upon the court the power to retain the cause and grant whatever relief is proper, including inverse condemnation (*Ferguson* v. *Village of Hamburg*, 272 N. Y. 234, 239–240). A decree of inverse condemnation fixing the amount of past and permanent damages resulting from an alleged burden upon the plaintiff's fee, and granting an injunction if the defendant fails to pay such damages, would furnish expeditious and adequate relief. * * * In view of the principle that the right of eminent domain is a purely legislative prerogative which can only be exercised pursuant to legislative authority (*Matter of Bronx Parkway Comm.*, 99 Misc. 397; *Matter of County of Nassau* [*Levittown*], 207 Misc. 190), it is our opinion that here the learned Special Term Justice had no authority to appoint commissioners of appraisal, since he had no formal condemnation petition before him but merely an action in equity wherein plaintiff sought injunctive relief and wherein the parties ultimately agreed that the doctrine of inverse condemnation might apply as a way of solving the equitable issues presented. In this posture the court was still left only with an action in equity, and not with a statutory condemnation proceeding wherein appointment of appraisers was authorized. Plaintiff is entitled to damages because there has been an unauthorized taking or use of her property for a purpose which is not a lawful highway or street use under the public easement existing by virtue of the use of the roadway as a public street."

In *Ferguson* v. *Village of Hamburg* (272 N. Y. 234) the plaintiff, a lower riparian owner, sought an injunction against the

Village of Hamburg diverting water from the Eighteen Mile Creek by use of a dam. The court permitted the village to proceed by inverse condemnation to condemn the lower riparian rights of plaintiff and only allowed an injunction if the village should fail to pay the damages as awarded by the trial court.

"In the elevated railway cases   *   *   *   they held that a court of equity could ascertain the damages and grant an injunction which was not to be effective unless the defendant failed to pay the amount fixed as damages for the past and permanent injury inflicted.   *   *   *   This method of expeditiously disposing of the entire matter in a court of equity, sometimes termed 'inverse condemnation,' has been applied in a case where land owners sought to enjoin a municipality from diverting waters." (*Ferguson* v. *Village of Hamburg, supra,* pp. 239–240.)

The *Ferguson* case clearly sanctions the disposition of this type of a proceeding in one case thereby not compelling the condemning authority to litigate title and damage questions in the Supreme Court action and then again in a separate condemnation proceeding.

Plaintiff argues against such a policy in favor of permitting inverse condemnation, by asserting that such should be denied where the occupation of the condemning authority is a willful and unlawful trespass, citing *Matter of St. Lawrence & Adirondack R. R. Co.* (133 N. Y. 270) and *Matter of Niagara Mohawk Power Corp.* v. *Deyle* (31 Misc 2d 993).

We find no reason to deny defendant the right to inverse condemnation upon the authorities cited. The question in *Matter of Niagara Mohawk Power Corp.* v. *Deyle* (*supra*) was which section of the Condemnation Law, section 23 or section 24, the power company was to proceed under, both giving temporary possession pending determination of the amount of damages. The court there discussed the unlawful method the power company had used to enter and string lines across respondent's property. The court required the utility to proceed under section 24 of the Condemnation Law which preserved to respondent any damages that had accrued through the utility's wrongful possession up to the time of the order. A similar holding obtained in the earlier case of *Matter of St. Lawrence & Adirondack R. R. Co.* (*supra*), which is cited for the proposition that a court will not condone possession of one who obtained it wrongfully.

The only inverse condemnation case cited by the trial court is *Matteson* v. *Antenna-Vision, Inc.* (54 Misc 2d 859). That case involved a cable television corporation which erroneously

ran its cable vision lines upon 16 poles sunk into plaintiff's land. The cable vision company counterclaimed for inverse condemnation, and the court held that as to the cable lines installed in plaintiff's property, there could be no inverse condemnation citing the *Heyert* case. The reasoning of the opinion is that there must be an entry upon the land with a color of right before the remedy of inverse condemnation will be granted. We know of no authority supporting such a determination. The *St. Lawrence & Adirondack R. R. Co.* case dealt with two sections of the Condemnation Law as did *Matter of Niagara Mohawk Power Corp.* v. *Deyle* and neither one discussed the question of inverse condemnation. In *Ferguson* (lower riparian rights) and *Heyert* (additional burden, highway easement) inverse condemnation was granted as a matter of right and judicial expedience so as to try all the issues in one action. There was no mention of whether the condemning authorities' possession was under color of right, completely tortious or in good or bad faith. The court in each case granted inverse condemnation and required that the damages assessed be paid or an injunction would issue and judgment of ejectment would be granted. In the instant case it would be procedurally permissible to allow the action for treble damages for trespass to continue, leaving the defendant to proceed by way of regular statutory condemnation. There is no particular merit in that solution, however, as it would entail all the delay incidental to maintaining two separate proceedings.

With respect to the question of treble damages for cutting and carrying off trees or timber under section 861 of the Real Property Actions and Proceedings Law, it would appear that the telephone company might establish that it had probable cause to believe its use of the land was lawful, thus exempting it from treble damages. At least a question of fact exists with respect to that issue.

With respect to the preconditions for condemnation, it is conceded that defendant has a franchise from the Town of Naples to lay telephone lines. Defendant also has permission from the Public Service Commission to put in the overhead lines running parallel to plaintiff's property. The regulations requiring permission of the Public Service Commission to lay new lines (16 NYCRR 24.1 [f]) have application to lines extending phone service to a territory not previously serviced, not changing the mode of stringing the lines either overhead or underground in cables. There are no preconditions set out in *Heyert* requiring that the statutory requirements contained in

the Condemnation Law be met to allow inverse condemnation to proceed.

The order appealed from should be modified by deleting so much thereof as dismissed defendant's counterclaim, by granting defendant summary judgment for inverse condemnation and by directing that the matter be remitted to Supreme Court to fix the damages to which plaintiff may be entitled by reason of the alleged trespass and such inverse condemnation, and as so modified, affirmed.

GOLDMAN, P. J., MOULE, CARDAMONE and HENRY, JJ., concur.

Order unanimously modified, and as so modified affirmed, without costs, and matter remitted to Supreme Court, all in accordance with opinion by MARSH, J.