"Wilfred A. Waltemade, J.
Tudor City, a residential landmark in midtown Manhattan, bounded generally by 40th and 43rd iStreets between Second and First Avenues, is the site under consideration. The complex encompasses some four acres (166,268 square feet), prestigiously situated just south of the United Nations. It contains 15 structures consisting of 10 large apartment buildings, a hotel, four brownstone buildings, and two parks that, have a total area of 30,873 square feet (18%% of the total complex). One of the parks is located south of 42nd Street on Tudor City Place (15,694 square feet) and the other park is north of 42nd Street on Tudor City Place (15,179 square feet). The parks and their use are the subject of this proceeding.
The motion by the plaintiff mortgagee and the motion by the defendant corporations aré consolidated for disposition. Both the mortgagee and the owners seek summary judgment against the City of New York. The application of the Tudor City Residents Association for leave to file a brief amicus curiae is granted and the position of the tenants has been considered by the court.
On September 30, 1970, the plaintiff, Fred F. French Investing Company, sold the entire complex, subject to a first mortgage, to defendant Ramsgate Properties, Inc., for a total sum of $36,000,000. In addition to cash, plaintiff received eight purchase-money mortgages totaling $22,701,986. One of the mortgages in the sum of $5,443,600 (approximately 15% of the purchase price) was secured by the North Assemblage, which included, in addition to the north private park area, three income-producing brownstone buildings and a 62-apartment building known as the Heritage. That area produces 3% of the total income generated by the Tudor City complex. The South Assemblage, which does not generate income, is secured by a mortgage of $3,380,000 (approximately 9% of the purchasé price) which covers the south park (15,652 square feet) and a vacant brownstone building at 337 East 41st Street.
*201 Immediately after purchase, the new owner proposed the erection of a mixed commercial and residential building using the air rights over East 42nd Street between First and Second Avenues, which envisioned the continuance of park-like open space of more than 40,000 square feet available for use by the general public. This proposal required the shifting of development rights and a zoning change from the park areas zoned R-10 to the area astride 42nd Street zoned C5-3. An alternative proposal was made for the construction of two tall buildings on the established park areas of Tudor City, under the existing zoning.
Both proposals precipitated an immediate reaction from the community and particularly the residents of Tudor City that led to public hearings by the City Planning Commission on October 4 and November 8, 1972 where consideration was given to the defendant owners’ proposals.
A resolution was voted recommending that the Board of Estimate amend the zoning resolution by establishing a Special Park District designed to promote the public interest, general welfare and environmental amenities, by requiring the owner io continue the parks as a passive recreational area with lighting, planting, landscaping and sitting areas for the public from 6:00 AM. to 10:00 P.M. daily. In what appears to be a recognition by the city for the need of some modicum of compensation, provision was made for the owners to be granted a waiver of zoning regulations in another area conveniently removed from the environs of the United Nations and the residents of Tudor City, and the transfer of air rights which could be utilized in contravention of any existing zoning, in the area bounded by 38th Street to 60th Street and from Third to Eighth Avenues. The Board of Estimate acted affirmatively on this resolution on December 7, 1972. Pursuant to this action, the owner is confronted with the problem of acquiring 30,000 square feet of property suitable for his purpose in the newly proscribed area, but he is left to his own resources for acquisition and funding in what may be an unpredictable market of the future.
The defendant owners have defaulted on the mortgages secured in part by the park areas, and the plaintiff mortgagee seeks summary judgment pursuant to CPLR 3212, declaring that the rezoning of property in which plaintiff has a security interest constitutes an unconstitutional taking by the City of New York of the property securing the mortgages, which mandates compensation based upon a fair market value of the park areas, or so much as does not exceed the sum of the unpaid principal *202 of the mortgage. In addition, there is a cross claim and motion for a declaratory judgment by the defendant owners, North Assemblage Company and South Assemblage Company, likewise alleging that the city’s action in rezoning the property was an unconstitutional taking and vesting of title in the City of New York that constitutes a de facto condemnation with resultant damages sustained by virtue thereof.
It is not for the courts to legislate where a park shall be established or even when such an improvement should be made. Only the executive and legislative branches of the government are to make such judgments of the particular need, priority and place for such public betterment.
While the City of New York, through its Board of Estimate and the Planning Commission, has the unquestioned right to enact zoning laws respecting the use of property in accordance with a well-considered and comprehensive plan designed to promote public health, safety and general welfare, such power is subject to the constitutional limitations that it may not be exerted arbitrarily or unreasonably (Nashville, Chattanooga & St. Louis Ry. v. Walters, 294 U. S. 405; Vernon Park Realty v. City of Mount Vernon, 307 N. Y. 493, 498, 499). If the change in the use of the property is incidental to a valid exercise of the sovereign’s police powers dictated by sound considerations of public safety, health and welfare, then it is a constitutionally privileged act for which no compensation need be paid (Mugler v. Kansas, 123 U. S. 623; Vernon Park Realty v. City of Mount Vernon, supra; Stevens v. Town of Huntington, 20 N Y 2d 352). Usually, a valid zoning change which restricts the use of property imposes hardship and a diminution in values (Matter of Wulfsohn v. Burden, 241 N. Y. 288). Americans accept this precept on the basis of a recognition that the greater good for the greater number outweighs the convenience of an individual in the use of real property. If, on the other hand, the zoning regulation goes so far as to preclude the use of the property for the purpose to which it is reasonably adapted, it is confiscatory and unconstitutional (Stevens v. Town of Huntington, 20 N Y 2d 352, supra; Vernon Park Realty v. City of Mount Vernon, 307 N. Y. 493, supra). The question in each case is ultimately one of reasonableness, and that, in turn, depends upon a total view of the relevant facts and circumstances.
The city’s action in rezoning the areas of the private parks into public recreational areas has totally destroyed the economic value of such plots and has significantly deprived the plaintiff mortgagee of its security for the mortgage. Additionally, the *203 defendant owners have been deprived of the nse of the property for an improvement to which it is reasonably adapted.
Thus, the critical question posed in the case at bar is whether the amendment to the zoning regulations, under the guise of creating a special park district, is a reasonable exercise of governmental police power. The imbalance here is patent. The zoning regulation bars the defendant owners from any economic use of their property. 1
Although, under the zoning amendment, title to the park areas remains in the owner defendants, their title is now encumbered by the city’s declaration that the two park areas are public (not limited to the Tudor City residents), and are to be maintained and kept open from 6:00 a.m. to 10:00 p.m. daily at the owners ’ cost and expense.
Parks, sometimes described as ‘ ‘ little islands of soil in the midst of the asphalt ”, are most desirable, and efforts, to preserve such delightful community enhancements should be encouraged. Here, however, the owners’ property has been singled out and rezoned without provision for fair, reasonable and just compensation.
Irrespective of the laudatory aspects of any project designed for the public good, the necessary approvals must be obtained in accord with the preservation of the legal rights of those whose land is appropriated, whether they be poor or rich.
A proceeding in condemnation under the existing statutes, a negotiated purchase, or in some instances, the donation of land, are the usual acceptable and legal means of establishing a park in the City of New York. But for the outright gifts of land, usage for public purposes is acquired by the payment of compensation to the owner from whom title is acquired. In any event, unless a donor voluntarily contributes funds for the maintenance of a park, the city also assumes all the costs and expenses involved in caring for the upkeep of the recreational areas.
The city’s attempt to transfer the existing zoning from the Tudor City private park to another more extensive area of Manhattan, was a gesture, which upon examination does not lend itself to a comprehension of the zoning regulations. Under this' proposed transfer of zoning, none of the affected owners or tenants of the property located in and about the new and future site could be heard to voice their objections to the proposed improvement at the transfer site. There has been a second violation of the zoning laws in that the city has preempted the rights of those tenants and owners at the future *204 transfer site. The public hearings mandated before a zoning change can be effective would then be an exercise in futility, because the city has already imposed the Tudor City zoning at whatever site the defendant owners select on Manhattan Island as hereinbefore described. The attempt to transfer the defendant owners’ zoning rights to the future site is either an oversight of the trammeling of the rights of those persons at the new- transfer site, or an expediential disposition of the Tudor City controversy. In any view of the city’s moves, the court concludes the amendment to be illegal.
It is understandable that the city’s agents appreciate that the value of the two private park plots, located in midtown Manhattan — with their walk-to-work and other prime residential advantages — is exceedingly valuable. The costs of acquisition by negotiated purchase or in a condemnation proceeding would be extremely high. However costly the legal route may prove,, the court cannot acquiesce in the means adopted by the city in its attempt to placate those opposed to the erection of two multistory residential buildings on the private park sites.
However costly, the city is not without its remedy to provide these public parks by pursuing the usual legal avenues of relief.
Both the plaintiff mortgagee and the defendant owners claim that the declaration of the special park district warrants their assertion of the doctrine of inverse condemnation, which each contends entitles them to “fair and just compensation” from the city for what they consider a “ taking ” of the two. parks.
In Trippe v. Port of N. Y. Auth. (17 A D 2d 472, revd. on other ground's 14 N Y 2d 119), the .court wrote (p. 474): “ In this State, it has been held that an owner asserting a claim for appropriation of his property may pursue his right by an action in equity for an injunction, and for damages; the court may then, as an alternative to the injunction, make an award for the taking (Pappenheim v. Metropolitan El. Ry. Co., 128 N. Y. 436; Van Allen v. New York El. R. R. Co., 144 N. Y. 174). This method of compensation is called inverse condemnation, and has been said to be the equivalent of condemnation (Ferguson v. Village of Hamburg, 272 N. Y. 234, 240) ”.
The court notes that neither the plaintiff nor the defendant owners cite any authority holding that where the zoning authority’s action in amending the zoning regulations has exceeded its powers in either unlawfully restricting the use of property or in not providing for “ just and fair compensation ”, that the municipality nevertheless is required to retain the property *205 and under such circumstances must pay the fair market value thereof to the owners. None of the cases, relied on hy the plaintiff in its memorandum, hold that where a zoning enactment is found unconstitutional and beyond the power of the zoning authority, as found by this court in the case at bar, that the owner, or the mortgagee, may elect to require that public funds be expended to acquire the property. In those cases where the courts have invoked the doctrine of inverse condemnation, the owners’ property had been physically taken and used by the appropriating authorities so that a restoration of the property to the owners was not possible (see Ferguson v. Village of Hamburg, 272 N. Y. 234; Heyert v. Orange & Rockland Utilities, 17 N Y 2d 352; Buholtz v. Rochester Tel. Corp., 40 AD 2d 283).
In the litigation before this court, the defendant City of New York has not taken title to the park areas nor has it assumed control or management of the property. The finding by this court that the enactment of the zoning amendment was unconstitutional and void, automatically restores the property to the R-10 zoning classification it had prior to the adoption of the zoning amendment (Matter of Concordia Collegiate Inst. v. Miller, 301 N. Y. 189).
The plaintiff and the defendant owners have not demonstrated any immediate financial loss because of the enactment of the zoning amendment. A restoration of the IL10 zoning classification places the plaintiff mortgagee and the defendant owners in the same position they were in prior to the invalid amendment, without any diminution in plaintiff’s mortgage security and without any loss in the value of the park areas.
Accordingly, the motions by the plaintiff mortgagee and the defendant owners for summary judgment are denied. Settle order which shall contain a provision declaring the zoning amendment void and restoring the R-10 zoning classification to both park areas.