OPINION OF THE COURT
Raymond E. Cornelius, J.
The initial petition, in the above matter, included an application for relief under CPLR article 78, as well as causes of action for trespass, public nuisance, private nuisance, negligence, and inverse condemnation. These latter claims, for which plaintiff sought money damages, were severed from the petition and resolved by a jury trial, which is now the subject of the within decision.
This court had previously granted the relief requested, pursuant to CPLR article 78, by annulling several resolutions of the Board of Supervisors of the County of Livingston. In this regard, the court incorporates, by reference herein, the earlier decision, which was dated November 4, 1996. The first resolution was passed by the Board of Supervisors on October 25, 1995, and in effect, authorized the County Attorney to commence a proceeding, under Highway Law § 120, to acquire a highway drainage pipe easement. Thereafter, on December 13, 1995, the Board of Supervisors passed another resolution authorizing the County Attorney to acquire a drainage easement pursuant to the provisions of the Eminent Domain Procedure Law. In essence, this court annulled both resolutions because of the failure to adhere to the requirements of the State Environmental Quality Review Act (SEQRA), as contained in the Environmental Conservation Law, and the regulations promulgated thereunder.
The drainage easement, which was the subject of the aforementioned resolutions, involved property owned by the *114 plaintiff and her spouse. As discussed in this court’s earlier decision, an old 12-inch clay bell tile, approximately 1,000 feet in length, had existed on plaintiff’s property for a long period of time. This drainage system ran from a catch basin, along York Road West, across plaintiff’s property to Brown’s Creek to the north. During the year 1995, extensive work was performed on York Road West, consisting of repaving and widening the roadway, and new catch basins were installed for the purpose of accommodating the road drainage. Thus, the water from the catch basin would presumably be carried, by means of the old drainage system underlying the plaintiff’s land, to Brown’s Creek. However, flooding began to occur on plaintiff’s property and representatives of the County of Livingston concluded that the drain system was blocked or collapsed, resulting in a non-functioning condition.
In addition to the resolutions, representatives of the County of Livingston actually entered onto plaintiff’s property on December 19, 1995. There was considerable correspondence between the parties, both before and after this date. A letter from the County Attorney, dated December 11, 1995, notified the plaintiff of an intent to enter plaintiff’s land for the limited purposes provided in EDPL 404, a copy of which was enclosed therein. This section in relevant part provides that a "condemnor * * * when acquiring real property in accordance with this law, or when engaged in work connected with a proposed public project * * * shall have the right to enter upon any real property for the purpose of making surveys, test pits and borings, or other investigations”. (EDPL 404.) Counsel for the plaintiff, by letter dated December 16, 1995, expressed objection to the proposed entry. Letters, dated December 18, 1995, were also exchanged, with the letter from plaintiff’s counsel to the County Attorney confirming an agreement that no repair work would be performed at the property and expressing the opinion that there would be no authority under EDPL 404 to conduct repair work, in any event. In a letter, dated January 19, 1996, a copy of which was attached as an exhibit to the petition, the County Attorney made an offer to Mr. and Mrs. Knapp to purchase an easement.
The plaintiff’s allegations, concerning the events of December 19, 1995, were summarized in this court’s earlier decision, and were, in fact, established and amplified at the trial of the action for damages. On that date, law enforcement officers escorted representatives of the County of Livingston to plaintiff’s property. These included the County Attorney, who *115 was substituted, as trial counsel, during the course of the trial, by his assistant, because he became a witness to the events of that day. (See, Ellis v County of Broome, 103 AD2d 861 [3d Dept 1984].) The proof disclosed that an approximate 20 foot trench was dug down the middle of a field, and a backhoe broke the drainage pipe in three locations, which were then covered with plastic sleeves. Tree roots were removed from the pipe and a sewage cleaner was also inserted into the pipe. These efforts resulted in the reopening of the drainage pipe to enable water to run from the roadway to the creek. Unfortunately, the proof established that sewage, probably from an adjacent property and belonging to a third person, was also being carried to the creek by means of the drainage pipe.
At the trial of the damage issues, the court ultimately submitted the causes of action for trespass, private nuisance and inverse condemnation to the jury for their consideration. In regard to the first two claims, trespass and private nuisance, the jury was instructed that it was necessary for the defendant to have acted without justification or consent. The jury was further apprised of the invalidation of the resolutions, passed by the Board of Supervisors, but further instructed that the County, nevertheless, relied upon EDPL 404 as justification for entry upon plaintiffs land. Although the jury was told that if they found that entry had occurred on plaintiffs property for the limited purposes set forth in the statute this would constitute justification, the plaintiff would, nevertheless, under the express provisions of this law, be entitled to any damages caused as the result of the entry.
As indicated by the answers on the questionnaire submitted to the jury, the jury found that defendant had not committed a trespass or private nuisance. This finding presumably was based upon the further finding that the defendant had entered plaintiffs property, pursuant to EDPL 404, but the jury also concluded that plaintiff had not sustained any damage as a proximate cause of such entry.
In regard to the cause of action for inverse condemnation, the court instructed the jury, in relevant part, as follows:
"An inverse condemnation occurs when the government has physically intruded onto the property and interfered with the owner’s property rights to such a degree that the conduct amounts to a taking without compensation.
"The defendant’s conduct must consist of a permanent physical occupation of the plaintiffs property amounting to the exercise of dominion and control thereof * * *
*116 "In effect, the de facto appropriation, in other words, the inverse condemnation, may be characterized as an * * * aggravated form of trespass. The basic distinction lies in the egregiousness of the trespass and is of such intensity it amounts to a taking.
"Again, in order to sustain a cause of action for inverse condemnation, plaintiff must prove that the defendant has intruded onto the plaintiffs property and interfered with their property rights to such a degree that the conduct amounts to a constitutional taking, in other words, a taking without compensation”.
As reflected in the answers contained on the questionnaire, the jury found that defendant had acquired property of the plaintiff by inverse condemnation, and awarded damages, as a proximate cause thereof, in the amount of $8,300. Although characterized, on the questionnaire, as a diminution in the fair market value of the plaintiffs property, the amount of $8,300 approximately represents the 10% utility loss ($6,388), as determined by one of plaintiffs experts, together with the cost of a fence ($2,000).
After return of the jury’s verdict, the court denied motions to set aside the verdict, and requested counsel to settle the order. In this connection, the plaintiff has now requested certain relief. First, an application is made to annul, as illegal, the inverse condemnation, as found by the jury, upon the theory that it constitutes an "action” as defined in ECL 8-0105 (4), and, therefore, subject to SEQRA. Plaintiff contends that because the County of Livingston failed to comply with SEQRA, the court should void the de facto taking of the drainage system and issue an injunction preventing the County of Livingston from exercising continued use, which would then permit the plaintiff to disconnect the pipe on her land. Alternatively, in the event of a judgment sanctioning the de facto taking, plaintiff requests that an easement be limited solely to the use of the pipe. Conversely, the County of Livingston requests that the court grant a permanent easement for use of the pipe and an additional 10 feet on each side of the pipe for purposes of maintenance and repair. Plaintiff also has submitted a motion for expenses, pursuant to EDPL 701, 702 (B) and (C).
First, the court would agree with counsel for the defendant that plaintiffs pleading did not seek invalidation of the de facto taking upon the alleged failure to comply with SE-QRA, but rather, expressly contained a cause of action for *117 damages based upon a claim of inverse condemnation. In paragraph 90 of the petition, which is a part of the second cause of action alleging a failure to comply with SEQRA, the plaintiff did state that "the County lacked jurisdiction to authorize the Resolution or take the Pipe, and the Resolutions and the taking of the Pipe are illegal, nonbinding, and without legal effect.” (Emphasis added.) Nevertheless, a review of the preceding paragraphs, contained in the same cause of action, reveals that the claim is based upon the alleged failure to comply with SEQRA before authorizing the two resolutions and initiating the road work on York Road West in 1995, as distinguished from the de facto taking of the pipe. Furthermore, this court holds that for reasons, hereinafter discussed, inverse condemnation does not constitute an "action” requiring compliance with SEQRA.
In regard to á claim for inverse condemnation, the Appellate Division of the Third Department has recently stated that the "sme qua non for such a cause of action is that defendant’s conduct must constitute a permanent physical occupation of plaintiffs’ property amounting to the exercise of dominion and control thereof”. (Reiss v Consolidated Edison Co., 228 AD2d 59, 61 [3d Dept 1996], appeal dismissed 89 NY2d 1085 [1997], lv denied 90 NY2d 807 [1997].) As quoted above, this court instructed the jury that plaintiff was required to establish a physical intrusion onto her property and interference with her property rights to such a degree that the conduct amounts to a constitutional taking, i.e., a taking without compensation, and further, that such conduct must consist of a permanent physical occupation of the property amounting to the exercise of dominion and control thereof. These instructions were in accordance with the prevailing definitions relating to the law of inverse condemnation. (See, O’Brien v City of Syracuse, 54 NY2d 353 [1981]; City of Buffalo v Clement Co., 28 NY2d 241 [1971], rearg denied 29 NY2d 640 [1971].) Further, the jury was told that a de facto appropriation may be characterized as an aggravated form of trespass, with the basic distinction being the egregiousness of trespass and whether it is of such intensity as to amount to a taking. (See, O’Brien v City of Syracuse, supra.)
On first impression, inverse condemnation, based upon a de facto taking, might be considered an "action” for purposes of SEQRA. Although characterized as a physical permanent taking of real property by a governmental agency, the concept of inverse condemnation is actually a procedural device, used by *118 courts of equity, to award damages and resolve property disputes in certain situations. (Ferguson v Village of Hamburg, 272 NY 234 [1936].) The doctrine has been described as follows: "The courts of New York have traditionally recognized inverse condemnation as a procedural vehicle for granting damages where an entity clothed with the power of eminent domain has interfered with the property rights of a landowner to the extent that it amounts to a compensable taking. Essential to the application of the equitable remedy of inverse condemnation is a finding that there has been a taking in the constitutional sense; without a de facto taking there is no appropriation, whether it be called inverse condemnation or otherwise. In order for a court to grant an order of inverse condemnation it is necessary to show that the use sought is a public use, that there is a public necessity therefor, and that the taking is under a color of right.[*] Any inverse condemnation is limited to acquisitions for public use and does not extend to cases involving only the regulation of the use of private property.” (51 NY Jur 2d, Eminent Domain, § 464, at 679.)
An excellent summary of situations in which courts have applied the equitable remedy of inverse condemnation is contained in Evans v City of Johnstown (96 Misc 2d 755, 759 [1978]), wherein the court stated the following: "Traditionally, the courts of this State have recognized inverse condemnation as a procedural vehicle for granting damages to an injured party where an [entity] cloaked with the powers of eminent domain has so interfered with the property rights of a landowner that it amounts to a compensable taking. The need for this vehicle arises in context of the situation where injunctive relief is sought—as is the situation here—but which cannot issue because of the equities of the comparative injuries—which may be the case here. It is the practical equivalent of a condemnation.” Counsel for the plaintiff is correct that this court is reluctant to grant injunctive relief directing discontinuance of use of the drainage pipe, which would then enable the plaintiff to disconnect the pipe, because this would create a nuisance. Specifically, such action would cause flooding to reoccur on plaintiffs land, as well as other properties, and would include the sewage from the adjoining landowner. Although the jury questionnaire form used the term "inverse condemna *119 tion”, counsel for the plaintiff is also correct that the jury actually was asked to determine whether or not, as a question of fact, there had been a taking. Based upon the affirmative answer to that question, this court, sitting as a court of equity, determines that an award of inverse condemnation is appropriate in this case, and that an injunction issue only in the event that the defendant fails to tender payment in the amount of damages, as determined by the jury. (See, Heyert v Orange & Rockland Utils., 24 AD2d 592 [2d Dept 1965], affd 17 NY2d 352 [1966], citing Ferguson v Village of Hamburg, supra.)
Provision is made in EDPL article 7 for an award of actual and necessary costs, disbursements and expenses, including, but not limited to, reasonable attorney, appraiser and engineer fees. However, the conditions under which an award may be made by the court vary depending upon whether there was a de facto taking (EDPL 702 [C]) or a taking pursuant to a proceeding authorized by the Eminent Domain Procedure Law. In the latter instance, sometimes referred to as a de jure taking, there is a further distinction between a discretionary award (EDPL 701) and a mandatory or obligatory ¿ward (EDPL 702 [B]).
In regard to a de facto taking of real property, a court of competent jurisdiction may award incidental expenses, but only if there is a determination "that the condemnor did in fact take property after the condemnor denied that there was any taking of property and made no offer to settle the claim”. (EDPL 702 [C].) During the course of the jury trial, the court became aware of several offers of settlement, made by the County of Livingston to the plaintiff, at least some of which exceeded the amount of damages awarded by the jury. Perhaps more significant is the fact, as aforementioned, that the County did make a written offer to purchase an easement by letter, dated January 19, 1996, prior to the commencement of this lawsuit. Accordingly, the court is unable to make an award for incidental expenses for the de facto taking because of this offer to settle the claim.
The County of Livingston had initiated a proceeding to acquire an easement, at least to the extent of passing of resolutions by the Board of Supervisors, which efforts were invalidated because of the failure to adhere to the requirements of SEQRA. EDPL 702 (B) does provide for an award of incidental expenses in the event that "a court of competent jurisdiction determines that the condemnor was not legally authorized to acquire the property”. Counsel for the plaintiff, in submitting *120 his application under this section, does not necessarily distinguish between counsel fees incurred in connection with the de facto taking of the easement and those associated with this court’s ruling that the defendant could not acquire the property under the Eminent Domain Procedure Law because of the failure to comply with SEQRA. He also requests reimbursement for future, anticipated attorney’s fees, but this section, as well as the other sections contained in article 7, only provide for "actual” expenses. There are also other problems relating to the application for incidental expenses pursuant to the authority of EDPL 702 (B). For example, plaintiff requests payment for certain experts retained in connection with this matter. One such person was a friend, who is also a certified organic farmer, and witnessed the events of December 19, 1995. Again, however, she testified as a witness at the jury trial involving the de facto taking of the property, and the court would not consider her as an expert witness in any event. Plaintiff also requests reimbursement of survey work and an engineer’s report, which appears to have postdated the jury trial in this case.
Based upon the foregoing reasons, this court declines, at this time, to make an award under EDPL 702 (B), without prejudice to further application. In addition to this section, of course, EDPL 701 gives the court discretionary authority to make an additional allowance for expenses, but only "[i]n instances where the order or award is substantially in excess of the amount of the condemnor’s proof’. In this regard, it should be noted the amount of damages, awarded by the jury for the de facto taking, exceeded defendant’s prior written offer by approximately $7,000. Furthermore, this court would be reluctant to award a discretionary allowance because of the plaintiffs rigid position concerning any compromise based upon what she perceived to be a lack of good faith on the part of the County.
Finally, the dominant owner of an easement has the duty to enter property for purposes of maintenance and repair. (See, 49 NY Jur 2d, Easements, §§ 137-138.) Thus, in this case, the County of Livingston, having acquired use of the drainage pipe by inverse condemnation, should have the right to enter plaintiff’s property, for those limited purposes, but not to otherwise interfere with her enjoyment of the property. If the County wishes specific footage, such as 10 feet on each side of *121 the pipe, an appropriate proceeding should be commenced under the Eminent Domain Procedure Law.
A proposed judgment should be submitted in accordance with the above decision.

* It would appear that it is no longer a requirement that a defendant’s entry upon land be "under color of right”. (See, Braman v Rochester Gas & Elec. Corp., 54 AD2d 174 [4th Dept 1976]; Buholtz v Rochester Tel. Corp., 40 AD2d 283 [4th Dept 1973], appeal dismissed 33 NY2d 939 [1974].)